**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-8299
_____

D. C. Docket No. 1:94-CV-1539-JEC

JACQUELINE PARAMORE,

Plaintiff-Appellant,

versus

DELTA AIR LINES, INC.,

Defendant,

DELTA FAMILY-CARE DISABILITY AND SURVIVORSHIP PLAN,.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

**(December 2, 1997)**

Before BIRCH, Circuit Judge, HILL and FARRIS[*], Senior Circuit
Judges.

---

[*]Honorable Jerome Farris, Senior U. S. Circuit Judge for the
Ninth Circuit, sitting by designation.

BIRCH, Circuit Judge:

Jacqueline Paramore, a former flight attendant for Delta Air Lines, Inc. ("Delta"), filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(1)(b) and (e), in which she sought an award of long-term disability benefits pursuant to the Delta Family Care Disability and Survivorship Plan ("the Plan"). Paramore contended that the Administrative Committee, acting in its capacity as administrator and fiduciary, violated the terms of the Plan and the governing federal law embodied in ERISA by denying the requested benefits. The district court determined that the Administrative Committee's decision to deny long-term disability benefits was neither arbitrary nor capricious and granted summary judgment in favor of Delta. For the reasons that follow, we conclude that the "arbitrary and capricious" standard of review is the appropriate standard by which to evaluate a plan administrator's factual findings in cases involving the denial of benefits under ERISA. We further conclude that the district court

properly applied this standard of review to the facts of this case in upholding the Administrative Committee's decision. We therefore affirm.

## I. BACKGROUND

For the limited purpose of resolving the issues presented in this appeal, the following facts are found to be undisputed: Jacqueline Paramore worked for approximately eleven years as a flight attendant for Delta. In 1991, while performing her job during the course of a flight, Paramore was involved in an incident that resulted in injury to her neck and shoulder. After an initial period of recuperation at home, Paramore returned to work sporadically for approximately one year. Paramore subsequently sought and received short-term disability benefits pursuant to the Plan; these benefits were awarded based on certifications from two treating physicians, Dr. Kenneth Lazarus and Dr. Patricia Tewes, who affirmed that Paramore had experienced a cervical strain. Paramore

next requested long-term disability benefits and sought certification for such benefits from Dr. Tewes. Dr. Tewes, however, indicated that Paramore could perform some light clerical work. Based on Dr. Tewes' observations, the request for long-term disability benefits was denied.

In accordance with the Plan's procedural framework, Paramore appealed this decision to the Administrative Subcommittee ("the Subcommittee"). Paramore specifically requested the Subcommittee to afford greater weight to the opinion of Dr. Lazarus, her treating physician, rather than Dr. Tewes, to whom she had been referred. At the Subcommittee's request, Paramore also was examined by Dr. Nicol, who withheld his opinion concerning Paramore's long-term prognosis pending further tests; Dr. Nicol did note his initial impressions of Paramore's condition as follows:

> Difficult to know exactly what's going on with this lady. She has symptoms of cervical strain and sprain, but no focal organic neurological deficits and, in fact, she has some "deficits" that would lead me to believe that there is a very

large functional component to her disorder at the present time.

Exh. 11 at 3. Dr. Lazarus forwarded to the Subcommittee a letter stating his belief that Paramore would be "unable to work in any capacity on even a part-time basis" and that her condition likely would "continue indefinitely despite maximum treatment." Exh. 12. Paramore also received a psychological examination by Dr. Wright, who rendered the following findings:

> Psychological testing results with this patient suggest considerable stress, but very little subjective psychological discomfort. Most of her stress and psychological pressures are being diverted into somatic symptoms, and she is quite preoccupied with her somatic processes while attempting to deny and repress any subjective psychological discomfort. I could not rule out the possibility of a conversion disorder. She has developed most of the classic signs of "chronic pain syndrome." Test indications regarding cognitive and intellectual abilities show the patient to be functioning within the bright-normal range with no problems. There were indications of organic brain dysfunction on testing.

Exh. 17. Pursuant to these observations, Dr. Wright recommended that Paramore would benefit from psychotherapy in addition to any other treatment she was receiving for chronic pain. Dr. Nicol subsequently wrote to the Subcommittee after reviewing both Dr. Wright's report and the results of the tests he previously had ordered. With respect to psychological aspects of Paramore's condition, Dr. Nicol stated: "I don't think that Ms. Paramore is suffering from any major physical disability, but psychosomatic aspects of her illness have supervened and are causing the majority of her problems at the present time." Exh. 20. In a separate letter, Dr. Nicol stated, in pertinent part:

> At the present time it would be my professional opinion that she is disabled, but I can't say as a result of demonstrable injury, because there was no demonstrable injury, at least from a purely physical standpoint. I think there probably is demonstrable injury from a psychological standpoint.
>
> I hope that this answers your questions satisfactorily. I hope that you will be able to get Ms. Paramore some ongoing psychological

> help so that she will [be] able to get back to work full time in the not too distant future as a flight attendant once these other issues have been addressed.

Exh. 21. Dr. Nicol further observed that although Paramore, in his view, was not capable of performing her customary job on a full time basis without limitations, she nonetheless was physically capable of performing sedentary work. See id.

On the same date on which Dr. Nicol filed his report with the Subcommittee, Dr. Tewes notified the Subcommittee that Paramore was no longer under her care and that Dr. Lazarus should make any further decisions regarding her capacity to work. Dr. Lazarus subsequently wrote a letter to a Subcommittee representative concerning Paramore's case and stated:

> With regard to Ms. Paramore's disability status, I believe that it would be appropriate for Ms. Paramore to return to some sort of sedentary work activity. I think this would be helpful to her, both with regard to her self-esteem and her recovery from her injury. . . . [I]n an appropriately supportive environment, I believe

7

> that Mrs. Paramore could and should return to some form of sedentary work.

Exh. 27.

After reviewing the doctors' submissions, the Subcommittee affirmed the denial of benefits and determined that Paramore's entitlement to disability benefits terminated as of November 14, 1992. Paramore appealed this decision to the Administrative Committee. Shortly thereafter, Dr. Lazarus wrote to the Administrative Committee a letter stating, in relevant part:

> I have been the treating physician for Mrs. Paramore and have been primarily responsible for her care. Decisions on her benefit status were apparently made with reference to forms filled out from other treating physicians, despite the fact that I have been the primary treating physician in this case. I am not certain on what basis the other physicians made their determination. It is my opinion that Mrs. Paramore was unable to return to any sort of gainful employment, even on a part-time basis prior to February 22, 1993. From that time forward, however, I do believe she has been capable of part-time sedentary work.

Exh. 33. The Administrative Committee determined, "[b]ased on information obtained from Dr. Tewes and from independent examinations performed by Dr. Nicol and Dr. Wright, Ms. Paramore could perform some type of work; . . ." Exh. 46 at 3. Consistent with this determination, the Administrative Committee decided that Paramore's disability benefits were correctly denied as of November 14, 1992.

## II. DISCUSSION

The district court's grant of summary judgment is subject to plenary review. See Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1554 (11th Cir. 1993). We therefore apply the same legal standards as those controlling the district court. Id. The standard that properly should have governed the district court's evaluation of the Administrative Committee's findings, however, is disputed by the parties. Paramore contends that, although the Administrative Committee's interpretation of the Plan's terms are

subject to an arbitrary and capricious standard of review, the court should have reviewed the Administrative Committee's factual determinations <u>de novo</u>. Delta responds that the court appropriately examined the propriety of the Administrative Committee's factual and interpretive conclusions solely to ascertain whether the denial of benefits in this instance constituted either an abuse of discretion or an arbitrary and capricious resolution of Paramore's claim.

ERISA does not provide a standard to review decisions of a plan administrator. In <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989), the Supreme Court looked to the principles underlying trust law as largely defining the role and responsibilities of a plan fiduciary or administrator;[1] more specifically, the Court reasoned that, "where discretion is

---

[1]Our discussion of the standard of review refers primarily to the proper level of deference afforded a plan administrator; our conclusions in this regard obtain with equal force, however, to plan fiduciaries. We previously have noted that the Supreme Court's treatment in <u>Firestone</u> of the possible standards of review that might apply to determinations rendered under ERISA-governed plans "applies equally to the decisions of fiduciaries and the plan administrator." <u>Brown v. Blue Cross & Blue Shield of Ala.</u>, 898 F.2d 1556, 1560 (11th Cir. 1990).

10

conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." Id. at 111, 109 S. Ct. at 954 (internal citation and quotation marks omitted). Applying these principles, the Court established a range of standards that pertain to benefits determinations under ERISA:

> a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . . Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.

Firestone, 489 U.S. at 115, 109 S. Ct. at 956-57 (citations and quotation marks omitted).

Consistent with the Court's directive in Firestone, we have adopted three standards of review for plan interpretations: (1) de novo, applicable where the plan administrator is not afforded

discretion, (2) arbitrary and capricious when the plan grants the administrator discretion, and (3) heightened arbitrary and capricious where there is a conflict of interest. Buckley v. Metropolitan Life, 115 F.3d 936, 939 (11th Cir.), rehearing denied, ___ F.3d ___ (11th Cir. 1997) (citing Maracek v. BellSouth Services, Inc., 49 F.3d 702, 705 (11th Cir. 1995).

Paramore and Delta agree that the plan at issue in this case affords the Administrative Committee discretion to construe the Plan's terms. For instance, the Plan expressly mandates that eligibility for disability benefits "shall be determined by the Administrative Committee or its designees," R1-1, Exh. A at 23, and confers on the Administrative Committee the power

> [t]o interpret the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation thereof in good faith to be final and conclusive; [t]o determine the amount, manner, and time of payment of benefits which shall be payable to any Employee or Dependent, . . . [and] to decide all questions concerning the Plan; . . .

Id. at 48-49.

Neither party contends that the Administrative Committee's interpretation of the plan's terms is at issue here; rather, the parties ask us to decide what constitutes the proper standard of review with respect to the Administrative Committee's factual determinations as incorporated in its ultimate conclusion that Paramore was not entitled to long-term disability benefits.

Our court has not yet conclusively stated the standard applicable to an ERISA plan administrator's factual findings. Significantly, we consistently have applied the arbitrary and capricious standard to eligibility determinations – without necessarily distinguishing the factual from the legal, interpretive bases of those decisions – in all instances in which a plan vested the administrator or fiduciary with discretion to interpret the plan's terms or to resolve questions of eligibility. See, e.g., Hunt v. Hawthorne Assoc., Inc., 119 F.3d 888, 912 (11th Cir. 1997) ("The arbitrary and capricious standard is the appropriate standard of review in this case

because the Plan contains express language conferring discretionary authority upon the administrator to construe its terms."); <u>Shannon v. Jack Eckerd Corp.</u>, 113 F.3d 208, 210 (11th Cir. 1997) ("Denial of benefits under an ERISA plan that gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan is reviewed by the district court for abuse of that discretion."); <u>Jett v. Blue Cross and Blue Shield of Alabama</u>, 890 F.2d 1137, 1139 (11th Cir. 1989) ("The plan in this case does give the administrator of the plan discretionary authority to determine eligibility for benefits and to construe the plan's terms. . . . Accordingly, the arbitrary and capricious standard of review applies here.") (internal citations, markings, and quotation marks omitted).[2]  Indeed, in only one case have we differentiated

---

[2]It is worth noting that our decisions involving the review of administrative decisions under ERISA-governed plans do not distinguish between the terms "arbitrary and capricious" and "abuse of discretion."  <u>See</u> <u>Jett</u>, 890 F.2d at 1139 ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision. . . ."). Although we hereinafter refer to the proper standard of review regarding the Administrative Committee's factual findings by the term "arbitrary and capricious," we recognize that, for purposes of

14

explicitly between an administrator's plan interpretations and fact-based findings; our resolution of that case, however, rendered a decision regarding the standard of review with respect to factual determinations to be unnecessary. See Maracek, 49 F.3d at 707 ("We decline to decide which standard of review should be applied for factual findings by a plan administrator as BellSouth's decision does not survive the most deferential standard of review.").

Other circuits that have addressed the question of the level of deference to which factual findings of an ERISA plan administrator are due uniformly have held that, where the plan confers discretionary authority to determine eligibility and to construe the plan's terms, the arbitrary and capricious standard of review applies. See, e.g., Rowan v. Unum Life Ins. Co. of America, 119 F.3d 433, 436 (6th Cir. 1997) ("The de novo standard of review applies only when the plan does not explicitly vest fact-finding discretion in the

---

evaluating a plan determination, there is no substantive distinction between the terms "arbitrary and capricious" and "abuse of discretion."

15

plan administrator."); <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433,

438-39 (3rd Cir. 1997) (where broad discretion afforded plan

administrator was undisputed, court applied Supreme Court's

analysis in <u>Firestone</u> and held that "the appropriate standard of

review . . . depends on whether the terms of this Plan grant the

Administrator discretion to act as a finder of facts. . . . [W]e conclude

that the Plan Administrator's decision to deny . . . [long-term

disability] benefits should be reviewed under an arbitrary and

capricious standard.") (citations and quotation marks omitted).[3] <u>Cf.</u>

<u>Pierre v. Connecticut Gen. Life Ins. Co.</u>, 932 F.2d 1552, 1562 (5th

---

[3]Interestingly, the Sixth Circuit has voted to rehear <u>en</u> <u>banc</u> a case involving the denial of benefits under an ERISA plan. In its order granting <u>en</u> <u>banc</u> rehearing, the court expressly noted that it would consider and resolve the following issue:

> Whether the decision of the U.S. Supreme Court in <u>Firestone</u> . . . , setting the standards for the review of an administrator's discretion in making ERISA plan decisions, encompasses decisions both of fact and of law, or whether the Supreme Court's decision should be limited only to setting standards with regard to an administrator's decisions of legal interpretation, while allowing unfettered discretion in all cases with respect to factual decisions.

<u>Perez v. Aetna Life Ins. Co.</u>, 106 F.3d 146 (6th Cir. 1997) (<u>en</u> <u>banc</u>).

Cir. 1991) (holding that, regardless of discretionary authority of plan administrator to interpret terms of plan, "for factual determinations under ERISA plans, the abuse of discretion standard of review is the appropriate standard; that is, federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment.").

As noted, an examination of our own decisional law reveals that we consistently have upheld application of the abuse of discretion standard of review to determinations involving both plan interpretations and factual findings under ERISA. The consistency of our decisions in this arena strongly suggests that our court has interpreted the Supreme Court's analytical framework in Firestone, particularly in regard to the application of trust law principles to the level of deference due an administrator or fiduciary, to mean that, where an ERISA plan grants discretion to a plan administrator to interpret the express terms of the plan or to determine eligibility for benefits, we review both the administrator's construction of the plan

17

and concomitant factual findings with respect to each case under an arbitrary and capricious standard of review. See Buckley, 115 F.3d at 939 ("Given that the . . . Plan at issue here vests the administrator with discretion, the district court properly employed the arbitrary and capricious guidelines in judging the administrator's factual conclusions."). We are cognizant of the fact that other circuits to have decided this issue similarly have found the arbitrary and capricious standard to obtain when the plan unambiguously affords discretionary authority on the administrator. We further find persuasive the Third Circuit's observation in Mitchell that "'application' of the Plan, like judicial 'application' of the law, must encompass the resolution of factual disputes as well as the interpretation of the governing provisions of the Plan." Mitchell, 113 F.3d at 439.

Thus, where the plan affords the administrator discretion, the administrator's fact-based determinations will not be disturbed if reasonable based on the information known to the administrator at

the time the decision was rendered. See Hunt, 119 F.3d at 912

("Under the arbitrary and capricious standard of review, the court

seeks 'to determine whether there was a reasonable basis for the

[administrator's] decision, based upon the facts as known to the

administrator at the time the decision was made.'") (quoting Jett, 890

F.2d at 1139).

Applying this standard of review to the facts presented in this

case, we conclude that the Administrative Committee's decision to

deny Paramore's request for long-term disability benefits was

reasonable based on the facts known to the Administrative

Committee at all times relevant to this action. Under the Plan at

issue, an employee may qualify for long-term disability benefits if the

following conditions are met:

> The Employee shall be eligible for Long Term
> Disability provided he is disabled at that time as
> a result of demonstrable injury or disease
> (including mental or nervous disorders) which
> will continuously and totally prevent him from
> engaging in any occupation whatsoever for
> compensation or profit, including part-time

work, but not including work performed in connection with a rehabilitation program approved by the Administrative Committee. . . . The Employee shall be eligible for Long Term Disability benefits so long as he remains disabled in accordance with this subsection and Section 4.01.

R1-1, Exh. A at 21.

As described earlier, the Administrative Committee initially received conflicted information from Dr. Tewes, indicating that Paramore was capable of sedentary work, and Dr. Lazarus, stating that Paramore's condition was likely to require long-term disability due to her pain disorder. In an attempt to gather further information, the Administrative Committee sought evaluations from several other physicians, including a neurologist, Dr. Nicol, and a psychologist, Dr. Wright. Although these doctors' medical evaluations both contained sporadic, internally inconsistent statements concerning both the degree to which Paramore suffered from a physiological – rather than stress-related – condition and the degree to which she was

capable of returning to work on some basis,[4] the Administrative Committee's function was to evaluate the various reports in tandem and render a determination as to Paramore's ability to engage "in any occupation whatsoever for compensation or profit, including part-time work." See R1-1, Exh. A at 21. We cannot say that the Administrative Committee's appraisal of the available medical information was unreasonable or inconsistent with the data with which the Committee had been provided. Stated differently, we conclude that there existed a reasonable basis to support the Administrative Committee's factual determination that, based on the administrative record examined in its entirety, Paramore was not entitled to long-term disability benefits.[5] The Administrative

---

[4] For instance, Dr. Nicol's report stated both that "[a]t the present time it would be my professional opinion that [Paramore] is disabled" and that "I hope you will be able to get Ms Paramore some ongoing psychological help so that she will [be] able to get back to work full time in the not too distant future . . . ". Exh. 21. Dr. Wright similarly noted that "[p]sychological testing results with this patient suggest considerable stress, but very little subjective psychological discomfort," while at the same time observed, "I could not rule out the possibility of a conversion disorder . . . . [and] there were indications of organic brain dysfunction on testing." Exh. 17.

[5] We find unpersuasive Paramore's assertion that the district court should have given greater weight to the Social Security

Committee's decision to deny benefits in this case thus was neither arbitrary nor capricious.

## III. CONCLUSION

Paramore asks that we reverse the district court's order granting summary judgment in favor of Delta. Paramore contends that the district court applied an incorrect standard of review in evaluating the Administrative Committee's factual determinations and improperly found these determinations to be supported by the record. We conclude that (1) where an ERISA-governed plan confers discretion on an administrator to interpret plan terms and decide eligibility for benefits, we review the administrator's fact-

Administration's determination that Paramore was totally disabled. Although a court may consider this information in reviewing a plan administrator's decision regarding eligibility for benefits under an ERISA-governed plan, see Kirwan v. Marriott Corp., 10 F.3d 784, 790 n.32 (11th Cir. 1994), an award of benefits by the Social Security Administration is not dispositive of the issue before us, particularly given the measure of deference that we afford a plan administrator's decision. Moreover, as noted by Delta, the decision of the Social Security Administration to award benefits was rendered after the Administrative Committee denied Paramore benefits; that determination consequently was not available to the Administrative Committee during the relevant time frame.

22

based conclusions regarding eligibility to determine whether these conclusions are arbitrary or capricious and (2) although the medical reports submitted to the Administrative Committee in this case were not a model of clarity, the Administrative Committee's overall evaluation of these reports was rational. Its factual determinations, therefore, were neither arbitrary nor capricious. The district court's order granting summary judgment in favor of Delta is AFFIRMED.