**Maureen MILLMAN, Plaintiff,**

v.

**KEMPER NATIONAL SERVICES PLANTATION, FLORIDA, Defendant.**

**No. 00–6657–CIV.**

United States District Court, S.D. Florida.

May 24, 2001.

Steven Harry Meyer, Kamen & Orlovsky, P.A., West Palm Beach, FL, for plaintiff Maureen Millman.

Jane T. Mastrucci, Thornton & Mastrucci, P.A., Coral Gables, FL, John M. Teijido, Kemper Insurance, Plantation, FL, for defendant Kemper National Services, Inc.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FERGUSON, District Judge.

The plaintiff, Maureen Millman ("Millman"), brings this action alleging that the defendant, Kemper National Services ("Kemper"), violated ERISA[1] by erroneously determining that she was no longer totally disabled within the meaning of its policy. The case is before the Court on Kemper's Motion for Summary Judgment [D.E. 20].

### FACTUAL BACKGROUND

On July 22, 1997 Millman suffered neck and back injuries in an accident unrelated to her employment. At the time she was employed by Kemper and was thus eligi-

---

1. *See* 29 U.S.C. § 1132(e)(1) which is section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA").

ble to participate in its long term disability plan which is wholly self-insured. After being treated by both a neurosurgeon, Dr. Foltz, and a neurologist, Dr. Goldberg, Millman underwent surgery and submitted a claim for benefits under Kemper's long term disability policy. The plan administrator determined that she was totally disabled, as defined by the terms of the policy, and began paying her benefits in October of 1997.

The plan provides that one is deemed "totally disabled" when "for the first 24 months that benefits are payable under this Plan, [he is] unable to perform each of the material and substantial duties"[2] of his job with Kemper. The plan summary also states that in addition to being totally disabled the employee must remain under the regular care of a physician who certifies the disability[3]. Lastly, the plan document provides that Kemper "shall determine all questions arising under the [plan] including .... questions as to the rights or eligibility of employees and the value of their benefits under the [plan] and a decision on any matter within [Kemper's] discretion made in good faith is binding on all persons."[4]

On September 18, 1998, during a routine periodic review of Millman's claim, Kemper learned of Dr. Foltz's determination that Millman was no longer totally disabled but was only 33% impaired. On the same date Kemper also discovered that Dr. Foltz had discharged her from his care on July 30, 1998. On September 21, 1998, Dr. Goldberg opined that Millman was not totally disabled and could perform some of her work tasks as of September 18, 1998. Dr. Goldberg also noted that he only counseled Millman on pain management and

would defer to the neurosurgeon, Dr. Foltz, as to the specific time period in which the she was totally disabled.

Kemper sought updated information from the neurosurgeon, Dr. Foltz, regarding the status of Millman's medical condition. It was advised by Dr. Foltz's office that he had not treated Millman since July of 1998 and therefore could not render an opinion as to whether she was totally or partially disabled. He further informed Kemper that she had been referred to Dr. Goldberg for treatment. Since Millman's only treating physician as of October 1998 was Dr. Goldberg, and because he certified that Millman was not totally disabled, Kemper terminated her long term disability benefits on October 22, 1998.

After meeting again with Millman on December 1, 1998 Dr. Foltz opined that she was disabled based upon her subjective complaints of pain, allegedly worsened by work activities, and her use of strong narcotic pain medication. He then sent her for a functional capacities evaluation (FCE) on December 10, 1998. The FCE revealed that Millman had some moderate hand weakness, fine motor skill impairment, and left upper extremity and cervical dysfunction. However, the FCE also reported some apparent "symptom magnification"[5]. For example, Millman was observed "bending over easily to pick up her purse from a seated position yet when asked to bend at the knees to pick up an object from the floor she state[d] she couldn't do it since she was in too much pain".[6]

Consistent with the FCE results, a January 14, 1999 independent medical examination (DIME) performed on Millman by

---

**2.** Pl's. Compl.Ex. aA p. 2.

**3.** *Id.* at p. 3.

**4.** McAllister Aff.Ex. 1 p. 13.

**5.** Miller Aff.Ex. 2–O.

**6.** *Id.*

Dr. Alberico revealed that she was not totally disabled and could return to work on a part-time basis of four (4) hours a day, gradually increasing to full-time status. Further supporting the FCE and IME results, Dr. Goldberg, in a July 14, 1999 letter of clarification, reiterated that at the time of his September 14, 1998 evaluation of Millman he "did feel she had limitations at work but that she was not totally incapacitated from doing it" and that "many people return to work on narcotic medications because it does help their pain and they are able to function".[7] In disagreement with Dr. Goldberg's medical opinion and the FCE and IME results, Dr. Foltz continued to maintain that Millman was disabled.

Millman challenged Kemper's determination that she was no longer totally disabled. At both the first and second claim appeal levels Kemper's decision was upheld because Millman was not under the continuous care of a physician who could certify that she was totally disabled at the time of the denial of further benefits. Millman has exhausted all administrative remedies prior to the filing of this ERISA suit for the denial of long term disability benefits under Kemper's employee welfare benefits plan.

### STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, a fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505.

In considering this motion for summary judgment, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the defendant should prevail as a matter of law." *Id.* at 243, 106 S.Ct. 2505. The movant bears the initial burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether the movant has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the non-movant. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1532 (11th Cir. 1992). "If reasonable minds could differ on the inferences arising from undisputed facts, summary judgment should be denied." *Id.* at 1534.

Once the initial burden is met, the non-movant must come forward with specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissable at trial. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991). Likewise, "a mere scintilla of evidence supporting a position will not suffice; there must be enough of a showing that the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Failure to make a showing sufficient to establish the

---

7. *Id.* at Ex. 2–AA.

existence of any essential element of a claim is fatal and requires the entry of summary judgment. *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. 2548.

## ISSUES PRESENTED

The single issue raised by the pleadings and the evidence is whether the decision to deny the employee's claim for benefits was unreasonable based on the evidence presented to the plan administrator.

## DISCUSSION

### Standard of Review

■ Although both parties concede that the plan is governed by ERISA there is no specific standard contained in the Act for reviewing benefits decisions made by plan administrators. The appellate court of this circuit, however, has fashioned the following three (3) distinct standards of review when analyzing benefits determinations made under ERISA policies: "(1) *de novo*, applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious when the plan grants the administrator discretion and (3) heightened arbitrary and capricious where there is a conflict of interest." *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir.1997).

In *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137, 1139 (11th Cir. 1989), the court applied the arbitrary and capricious standard in reviewing the denial of benefits where the language of the plan granted the administrator "discretionary authority to determine the eligibility for benefits [and] to construe the

[plan's] terms ... [and] such determinations shall be final and conclusive." *See also Anderson v. Blue Cross/Blue Shield of Alabama*, 907 F.2d 1072 (11th Cir. 1990); *Luton v. Prudential Ins. Co. of America*, 88 F.Supp.2d 1364, 1370 (S.D.Fla.2000). (applying the arbitrary and capricious standard of review where the plan's language conferred upon Prudential the "responsibility, discretion and authority to interpret the program, including .... questions concerning eligibility and benefit determination").

Similar to the line of cases which applied the arbitrary and capricious standard of review, the language of the Kemper plan provides that it has broad discretion concerning the administration of the plan. More specifically the language of the plan clearly vests in Kemper the power to determine employees' eligibility for any benefits under the long term disability plan and further provides that Kemper's decision is "binding on all persons". The arbitrary and capricious standard of review is also applicable to the facts of this case because there is no showing of a conflict which would invoke the heightened arbitrary and capricious standard of review. Instead the language of the plan summary suggests that it is wholly self insured and funded exclusively by trust funds derived from employee contributions in amounts determined by Kemper based on an actuarial review of the sufficiency of the trust assets to meet actual and anticipated claims.[8] Kemper has no ownership of the money held in trust and thus derives no benefit for denying a claim rendering a heightened standard inapplicable.[9]

---

8. Pl's. Compl.Ex. aA p. 6.

9. *See Levinson v. Reliance Std. Life Ins.*, 245 F.3d 1321 (11th Cir.2001) ("[b]ecause Reliance pays out to beneficiaries from its own assets ... a conflict of interest exists between its fiduciary role and its profit making role. Thus, the proper standard in this case is a

heightened arbitrary and capricious standard."); *Schreck v. Reliance Std. Life Ins.*, 104 F.Supp.2d 1373, 1375 (S.D.Fla.2000) (applying the heightened standard because a conflict of interest exists "where the insurance company administers the plan and pays the beneficiaries from its own assets").

 Concededly the evidence as to Millman's physical condition is conflicting. However when conducting a review of the ERISA benefits denial under an arbitrary and capricious standard, where there is evidence that would support a contrary decision, the function of the court is to determine whether there was a reasonable basis for the decision based upon the facts as known to the administrator at the time the decision was made. *See Jett,* 890 F.2d at 1140.

In *Paramore* a flight attendant brought suit seeking an award of long term disability benefits. 129 F.3d at 1446. The benefit review committee was confronted with conflicting medical opinions concerning her alleged disability. Initially the "principal" treating physician discharged her from his care because he and other physicians, including an IME doctor, decided that she was not totally disabled and was capable of sedentary work. Later the "principal" physician submitted a letter to the Plan administrators indicating that he felt she was totally disabled. However, rejecting the plaintiff's request, the court did not afford the primary treating physician's opinion greater weight than other conflicting medical opinions and upheld the termination decision under the arbitrary and capricious standard of review. *Id.* at 1452. The *Paramore* court stated "[w]e cannot say that the [committee's] appraisal of the available medical information was unreasonable or inconsistent with the data with which the [c]ommittee had been provided. Stated differently, we conclude that there existed a reasonable basis to support the [committee's] determination that ... Paramore was not entitled to long-term disability benefits." *Id.* As in *Paramore,* the court held in *Jett,* that a plan administrator's decision to terminate disability bene-

fits without consulting the treating physician was not an abuse of discretion where his view was contrary to all of the other reviewing doctors, including the opinion of an outside medical consultant.

There was a reasonable basis for Kemper's October 22, 1998 decision to terminate Millman's long term disability benefits. Although Dr. Foltz was undisputedly Millman's primary physician, his later change in opinion as to her medical condition is not entitled to greater weight than the plethora of medical opinions and evidence to the contrary.

Having duly considered the motion, and noting Millman's failure to respond [10], it is

**ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment [D.E. 20] is **GRANTED. This case is closed. All pending motions are rendered moot by this Order.**

---

**10.** The Defendant's Motion for Summary Judgment was both dated and filed with the Court on February 8, 2001. As of the date of this Order, Millman has filed no response to the motion.