**Judy PARKER, Plaintiff,**

v.

**Helen ROSS and Newell Company Employee Health Plan for Hourly Levolor Employees, Defendants.**

**No. 3:00–CV–48 (DF).**

United States District Court, M.D. Georgia, Athens Division.

June 26, 2001.

---

Karen M. Raby, Atlanta, GA, Kenneth Kalivoda, Athens, GA, for Plaintiff.

Robert Malcolm Darroch, Atlanta, GA, Michael C. Pruett, Athens, GA, Thomas H. Lawrence, Memphis, TN, for Defendants.

## ORDER

FITZPATRICK, District Judge.

This case is before the Court on Defendant Newell's "Motion for Entry of Judgment Based upon Administrative Record or, in the Alternative, Motion for Summary Judgment."

## I. FACTS

After sustaining injuries in a motor vehicle collision with Defendant Ross on January 13, 1998, Plaintiff sued Ross in the Superior Court of Oglethorpe County. Plaintiff also filed a claim for benefits under her medical insurance plan, which was an employee welfare benefit plan covered under the Employee Retirement Income Security Act of 1974, and was reimbursed $29,282.58 for her medical expenses. On February 10, 2000, Plaintiff settled her

claim against Defendant Ross for $100,000.00, which was the coverage limit in Defendant Ross's liability insurance policy. Defendant Ross's insurance company, National General Insurance Company, paid the $100,000.00 into the registry of the state court. Plaintiff then filed a "Motion for Interpleader, Declaratory Relief, and to Add Newell Company Employee Health Plan for Hourly Levolor Employees as Party Defendant," in which she sought (1) to add Newell as a party defendant; (2) a declaration (a) that her settlement with Defendant Ross "does not fully and completely compensate her for all economic and non-economic losses incurred as a result of her January 13, 1998 injury, and that Newell therefore has no right of subrogation or reimbursement," and (b) that Defendant Ross and NGIC "are released from all further liability from both plaintiff and Newell for all claims arising out of the injuries sustained by the plaintiff in her January 13, 1998 car wreck with the defendant"; and (3) an order directing the clerk to pay $72,733.42 from the court's registry to Plaintiff and her attorneys. In ruling on Plaintiff's motion, the state court (1) added Newell as a party defendant; (2) ordered Newell to show cause on May 19, 2000, why Plaintiff's prayers for declaratory relief should not be granted; and (3) ordered the clerk, upon receipt of the $100,000.00, to pay $72,733.42 to Plaintiff and her attorneys. Defendant Newell then removed the case to the Middle District on the basis of federal-question jurisdiction and asserted a counter-claim against Plaintiff to recover the $29,282.58 that it paid to Plaintiff as reimbursement for her medical expenses.

On September 28, 2000, the Newell Welfare Benefit Plans Administrative Committee, which is the named fiduciary and plan administrator under ERISA, met to deter-mine Plaintiff's rights and obligations under the plan in connection with the injuries she sustained on January 13, 1998. After analyzing the facts and the provisions of the plan, the Committee "conclude[d] that the Plan is entitled to priority reimbursement, without any reductions, of the $29,282.58 paid on behalf of Judy Parker because of her January 13, 1998 injuries out of the additional $100,000 she has recovered from third parties because of those injuries." Defendant Newell then filed its "Motion for Entry of Judgment Based upon Administrative Record or, in the Alternative, Motion for Summary Judgment."

## II. DISCUSSION

In its motion, Defendant Newell is seeking an order affirming the decision of the Committee on the ground that it was not arbitrary and capricious. Alternatively, Defendant Newell is moving for summary judgment on both Plaintiff's claim and its counter-claim. In response, Plaintiff argues that there are genuine issues of material fact that render summary judgment inappropriate. Specifically, Plaintiff contends that there is a dispute as to (1) the amount that Defendant Newell paid for Plaintiff's medical expenses, and (2) which version of the plan applies in this case.

### A. Standard of Review

Although not specified in the complaint or notice of removal, Plaintiff's claims for declaratory relief appear to be premised on § 502(a)(1)(B) of ERISA, which provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C.A. § 1132(a)(1)(B) (West 1999). As the Sixth Circuit has noted, "There appears to be great confusion among the district courts as to the proper method of adjudicating proceedings brought under 29 U.S.C. § 1132(a)(1)(B) ...." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 617 (6th Cir.1998) (Gilman, J., concurring).[1] Despite the fact that "the concept of summary judgment is inapposite to the adjudication of an ERISA action," *see id.* at 619, courts in the Eleventh Circuit have routinely treated claims brought under this statute as summary judgment cases. Therefore, in the absence of an Eleventh Circuit holding to the contrary, the Court will resolve this case under the label of "summary judgment." However, because the standard of review under Rule 56 is inconsistent with the standard of review for cases brought under § 1132(a)(1)(B), the Court will not apply Rule 56 to this case.

■ Although "ERISA does not provide a standard to review decisions of a plan administrator," *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1449 (11th Cir. 1997), the Supreme Court has created "a specially fashioned rule designed to carry out Congress's intent under ERISA." *Wilkins,* 150 F.3d at 618. That rule requires courts to review decisions challenged under § 1132(a)(1)(B) with the de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Consis-

tent with this rule, the Eleventh Circuit has adopted three standards to review interpretations of plans covered by ERISA: "(1) *de novo,* applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious when the plan grants the administrator discretion, and (3) heightened arbitrary and capricious where there is a conflict of interest." *Paramore,* 129 F.3d at 1449.

As discussed below, the Court agrees with the Committee's decision; therefore, it is unnecessary to decide whether a conflict of interest existed. *See Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000) (per curiam). Consequently, the Court must apply either the de novo or the arbitrary and capricious standard of review, depending on whether the plan gives the Committee sufficient discretion.

With respect to the Committee's discretion, the plan provides as follows:

> The Committee has the exclusive power and authority, in its sole discretion, to determine all questions of Program coverage and eligibility for benefits, the methods of providing or arranging for such benefits and all other related matters. Any construction of the Program adopted by the Committee is binding upon Plan participants.

> The Committee has sole responsibility for the administration of the Program. The Committee has full discretionary authority to: interpret the Program and construe Program terms; determine eligibility for and the amount of benefits; determine the status and rights of Em-

---

1. Although this part of the Sixth Circuit's opinion is set forth in Judge Gilman's concurring opinion, it constitutes the opinion of the court on the issue addressed in Part II.F of

Judge Cole's opinion—i.e., whether summary judgment is an appropriate method of resolving ERISA cases—because it was joined by Judge Ryan.

ployees, dependents and other persons; make rulings; make regulations and prescribe procedures; gather needed information; prescribe forms; exercise all of the power and authority contemplated by ERISA and the Internal Revenue Code with respect to the Program; employ or appoint persons to help or advise in any administrative functions; appoint investment managers and trustees; and generally do anything needed to operate, manage and administer the Program. The Committee has the requisite discretionary authority and control over the Program to require deferential judicial review of its decisions as set forth by the United States Supreme Court in *Firestone Tire & Rubber Co. v. Bruch.*

Because this provision clearly reserves to the Committee full and exclusive authority to determine all questions of coverage and eligibility as well as to interpret and construe the terms of the plan, the plan gives the Committee sufficient discretion to make the arbitrary and capricious standard of review applicable in this case. This standard applies to both the Committee's interpretation and construction of the plan's terms as well as the Committee's factual findings. *See Paramore,* 129 F.3d at 1450.

### B. Was the Committee's Decision Arbitrary and Capricious?

■ Under the arbitrary and capricious standard of review, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989); *see also Cagle v. Bruner,* 112 F.3d 1510, 1518 (11th Cir.1997) (per curiam) ("Under the arbitrary and capricious standard of

review, we are limited to deciding whether the Fund's interpretation of the plan was made rationally and in good faith."). If there was a reasonable basis for the Committee's decision, "it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett,* 890 F.2d at 1140.

■ The initial question the Court must answer, because the resolution of all other issues depends on it, is which version of the plan applies in this case. Defendant Newell contends that the 1998 version of the plan was in effect when Plaintiff was injured, whereas Plaintiff responds that the 1994 version of the plan applies. This disagreement is the essence of the dispute in this case; indeed, Plaintiff has not argued that she should prevail under the 1998 version.

In its report, the Committee "determined that the 1998 version of the Plan is the correct version of the Plan to govern Judy Parker's reimbursement obligations." The Committee explained (1) that the 1998 version was effective, by amendment, on January 1, 1998, which was prior to the date on which Plaintiff sustained her injuries, and (2) that Defendant Newell's counter-claim did not arise until after Plaintiff settled her claim against Defendant Ross on February 10, 2000, which was well after the effective date of the 1998 version. Applying the arbitrary and capricious standard of review, the Court concludes that the Committee's decision was reasonable and rational in light of the facts known by it at the time its decision was made. In support of her argument that the 1994 version applies, Plaintiff relies on a letter written by Theresa Marten, the Manager of Health and Welfare Benefits for Newell Rubbermaid, Inc., on December 14, 1999, which states that the 1994 version "was

the document in force as of 1/13/1998." However, Ms. Marten testified in her first affidavit that she simply made a mistake when she wrote that letter. *See* Marten Aff. ¶ 4.[2] That Ms. Marten simply made a mistake is supported by a document entitled "Unanimous Consent of the Board of Directors of Newell Operating Company," which was signed on December 30, 1998. In that document, the Board consented to amend and restate the Newell Health and Welfare Program 506, including its 14 participating plans, effective January 1, 1998. Significantly, the amended plan "did not change the amount of medical benefits that Judy Parker was entitled to receive, or did receive, under the Plan." *Id.* Based on these facts, the Committee did not act arbitrarily or capriciously in determining that the 1998 version was in force on January 13, 1998. *See Dyce v. Salaried Employees' Pension Plan of Allied Corp.*, 15 F.3d 163, 166 (11th Cir.1994) (holding that ERISA plans may be amended retroactively if the amendment "does not deprive participants of a benefit to which they would otherwise be entitled"). Therefore, Plaintiff's rights and obligations in this case are governed by the 1998 version.

Plaintiff also argues that the 1994 version applies because the Newell Company Employee Health Plan for Hourly Levolor Employees was not listed in the "Unanimous Consent of the Board of Directors of Newell Operating Company" as one of the participating plans that was retroactively amended and restated on December 30, 1998. However, as Ms. Marten testified in her second affidavit, the plan identified in the "Unanimous Consent of the Board of Directors of Newell Operating Company" as the Newell Medical Plan for Factory and Distribution Hourly Employees is the same plan identified in this case as the Newell Company Employee Health Plan for Hourly Levolor Employees. *See* Second Marten Aff. ¶ 2.[3] Ms. Marten explained that the usual practice is to use nonspecific names for the participating plans, but that the name of the factory or facility where the participants are employed is added when plan summaries are provided to those participants. *See id.* There being a reasonable and rational explanation for the discrepancy identified by Plaintiff, the Court's conclusion that the Committee did not act arbitrarily or capriciously in determining that the 1998 version applies remains unchanged.[4]

Having determined that the Committee reasonably and rationally concluded that

---

**2.** Although Ms. Marten's first affidavit was not available to the Committee when it made its decision, the Committee obtained the facts of this matter from Ms. Marten. Thus, the Court finds that it is reasonable to assume that the Committee was aware of the facts described in Ms. Marten's first affidavit at the time it made its decision.

**3.** Like her first affidavit, Ms. Marten's second affidavit was not available to the Committee when it made its decision. Nevertheless, because the Committee obtained the facts of this matter from Ms. Marten, and because the facts described in Ms. Marten's second affidavit are the kind of facts that would be within the realm of knowledge of the Board of Directors, the Court finds that it is reasonable to assume that the Committee was aware of the facts described in Ms. Marten's second affidavit at the time it made its decision.

**4.** The Court has identified another discrepancy regarding which plan Plaintiff participated in. In its initial brief, Defendant Newell suggests that Plaintiff was a participant in the Newell Medical Plan for Exempt and Non–Exempt Employees; however, Ms. Marten's second affidavit indicates that Plaintiff was a participant in the Newell Medical Plan for Factory and Distribution Hourly Employees. The Court attaches no significance to this discrepancy because both plans were retroactively amended and restated on December 30, 1998.

the 1998 version applies, the Court finds that Plaintiff's reimbursement obligations are clear. With regard to subrogation and right of recovery, the 1998 version provides as follows:

An Other Party may be liable or legally responsible to pay expenses, compensation and/or damages in relation to an illness, a sickness, or a bodily injury incurred by you or one of your covered dependents (a "covered person").

An "Other Party" includes, but is not limited to, any of the following:

- the party or parties who caused the illness, sickness or bodily injury;

- the insurer or other indemnifier of the party or parties who caused the illness, sickness or bodily injury;

.    .    .    .    .

Benefits may also be payable under the Program in relation to the illness, sickness or bodily injury. When this happens, the Company may, at its option:

.    .    .    .    .

- recover from the covered person or his or her legal representative any benefits paid under the Program from any payment the covered person receives or is entitled to receive from the Other Party.

The covered person or his or her legal representative must cooperate fully with the Company in asserting its subrogation and recovery rights. The covered person or his or her legal representative must, upon request from the Company, provide all information and sign and return all documents necessary for the Company to exercise its rights under this provision.

The Company will have a first lien upon any recovery, whether by settlement,

judgment, mediation or arbitration, that the covered person receives or is entitled to receive from any of the sources listed above. The lien will not exceed the lesser of:

- the amount of benefits paid by the Company for the illness, sickness or bodily injury, plus the amount of all future benefits that may become payable under the Program that result from the illness, sickness or bodily injury. The Company will have the right to offset or recover such future benefits from the amount received from the Other Party; or

- the amount recovered from the Other Party.

If the covered person or his or her legal representative:

- makes any recovery from any of the sources described above; and

- fails to reimburse the Company for any benefits that arise from the illness, sickness or bodily injury;

then:

- the covered person or his or her legal representative will be personally liable to the Company for the amount of the benefits paid under this Program; and

- the Company may reduce future benefits payable under this Program for any illness, sickness or bodily injury by the payment that the covered person or his or her legal representative has received from the Other Party.

The Company's first lien rights will not be reduced due to the covered person's own negligence; or due to the covered

person not being made whole; or due to attorney's fees and costs.

In its report, the Committee "determined that, under the Plan's Provision, which entitles the Plan to recover sums that are available from an other party or insurer, the Plan is entitled to recover 100% of the medical expenses paid, without any reductions, under the 1998 version of the Provision." In addition to these unambiguous terms, the Committee's decision was also based on the reimbursement agreement executed by Plaintiff, which provides, "I agree to reimburse my employer health program in accordance with the subrogation and reimbursement rights as they are outlined in the plan and will do nothing to prejudice those rights." Moreover, although not mentioned by the Committee in its decision, Plaintiff wrote the following statement below her signature to the reimbursement agreement: "I will reimburse if I ever receive any monies from National General (which may be doubtful)." Plaintiff's doubt has become reality, and she cannot now avoid her obligations under the unambiguous terms of the 1998 version. In light of these unambiguous terms, the only possible conclusion is that the Committee's decision was reasonable and rational. Therefore, the Court finds that the Committee did not act arbitrarily or capriciously in determining that Plaintiff is obligated to reimburse Defendant Newell for the $29,282.58 that it paid on her behalf for medical expenses.

Plaintiff further argues that there is a dispute as to the amount of Defendant Newell's reimbursement claim. Specifically, Plaintiff argues that the $29,282.58 includes amounts for medical expenses that are not related to the injuries she sustained on January 13, 1998. *See* Parker Aff. ¶¶ 2–3. However, the Committee reviewed an itemized statement of expenses and concluded that Plaintiff is obligated for the full amount. Because Plaintiff has not presented any evidence to support her argument other than her own conclusory affidavit, the Court cannot find that the Committee's decision was arbitrary or capricious.

Finally, Plaintiff argues that she is not obligated to reimburse Defendant Newell because her settlement with Defendant Ross did not fully and completely compensate her for all her injuries. Because the 1998 version specifically disclaims the make-whole rule, there is no merit to this contention. *See Cagle*, 112 F.3d at 1520–22 (holding that the make-whole doctrine is the default rule in ERISA cases, but that it does not apply if the plan expressly precludes it).

## III. CONCLUSION

In sum, the Court finds that every aspect of the Committee's decision was made reasonably, rationally, and in good faith. Therefore, the Court affirms the Committee's determination that Plaintiff is obligated under the unambiguous terms of the 1998 version of the plan to reimburse Defendant Newell the $29,282.58 that it paid on her behalf for her medical expenses. As a result, Defendant Newell is entitled to summary judgment. To the extent that a separate ruling on Defendant Newell's counter-claim is required, Defendant Newell is entitled to summary judgment on that claim as well. *See Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 n. 5 (11th Cir.1998) (holding that specific performance of the reimbursement provision of a plan is appropriate equitable relief under 29 U.S.C.A. § 1132(a)(3)(B)). Accordingly, Defendant Newell's motion is **GRANTED.**