**Jacqueline NORMIL, Plaintiff,**

v.

**COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY, Funeral Financial Systems, Ltd. and Riverview Memorial Park, Defendants.**

**No. 0414086CIV.**

United States District Court,
S.D. Florida.

Aug. 15, 2005.

Louis Nikolaus Larsen, Larsen & Burke, Stuart, FL, for Jacqueline Normil, Plaintiff.

William Joseph Gallwey, III, Shutts & Bowen, Miami, Ernest Clayton Yates, Fort Pierce, FL, for Colonial Life & Accident Insurance Company, Funeral Financial Systems, Ltd. defendant Riverview Memorial Park, Defendants.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARRA, District Judge.

THIS CAUSE is before the Court upon Defendant Colonial Life and Accident Insurance Company's ("Colonial Life" or "Defendant") Motion for Summary Judgment, filed April 4, 2005 [DE 24]. Plaintiff Jacqueline Normil ("Ms. Normil" or "Plaintiff") filed a response on May 2, 2005 [DE 29]. Defendant filed a reply on May 9, 2005 [DE 31]. The Court heard oral argument on August 11, 2005. The matter is now ripe for review.

### I. Background

The facts, as culled from affidavits, exhibits, answers, the administrative record and reasonably inferred therefrom in a light most favorable to the Plaintiff, for the purposes of this Summary Judgment Motion, are as follows:

Colonial Life issued a group life insurance policy which provided insurance coverage to eligible employees of Piccadilly Cafeteria ("Piccadilly"), including, for a time Augustin Normil ("Decedent"). *See* Amended Complaint at ¶ 4; Colonial Life's Answer at ¶ 4. Ms. Normil, who is Decedent's wife, is the beneficiary of Decedent's life insurance. *See* Amended Complaint at ¶ 7; Colonial Life's Answer at ¶ 7; Affidavit of Plaintiff at ¶ 2. Decedent died

on September 23, 2001. *See* Administrative Record ("A.R.") at C–59; Affidavit of Plaintiff at ¶ 2.

The Certificate of Coverage ("Certificate") set out the terms of Decedent's coverage. *See* Certificate attached as Exhibit A to the Joint Scheduling Report ("JSR") [DE 8]. The Certificate is part of an employee welfare benefit plan within the meaning of ERISA. *See* JSR at 2, ¶ 2(d). Decedent was a plan participant and Colonial Life was a claims administrator and fiduciary within the meaning of ERISA. *See id.*

The Certificate provided Colonial Life with discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the Certificate. *See* Certificate at 1. Under the terms of the Certificate, eligibility for coverage was conditioned on being in "active employment" for the employer in an eligible group. *See id.* at 5. The Certificate defines "active employment" as "working . . . for earnings that are paid regularly" while "performing the material and substantial duties of [the employee's] regular occupation." *See id.* With respect to the termination of an employee's insurance coverage, the Certificate provides as follows:

**When Your Coverage Ends**

Your coverage under the Summary of Benefits or a plan ends on the earliest of:

- the date the Summary of Benefits or a Plan is cancelled;
- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any premium payments; or
- the last day you are in active employment unless continued due to a

temporary layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.

*See id.* at 9.

Ms. Normil made a claim for benefits under the Certificate. *See* JSR at 1, ¶ 2(b). As part of its evaluation of her claim, Colonial Life faxed Piccadilly a form seeking pertinent information. *See* A.R. at C–51. On October 1, 2001, Colonial Life received a form, signed by the vice president of Piccadilly, that stated that Decedent's last day of full-time work at Piccadilly was July 13, 2001 and that Decedent's insurance had "terminated prior to death." *See id.*

On October 15, 2001, a representative at Colonial Life spoke by telephone with the Piccadilly executive who had completed the information form. *See id* at C–64. When asked for details as to why Decedent's coverage terminated on July 13, 2001, the executive advised that Decedent "just quit" on that date. *See id.* According to Colonial Life's records, Decedent did not seek to exercise any option for continuation of coverage beyond his last date of employment and his coverage under the policy terminated on July 13, 2001. *See id.* at C–72, C–75. Colonial Life denied Ms. Normil's claim on October 31, 2001, explaining that benefits were not payable because Decedent was not covered under the Certificate at the time of his death. *See id.* at C–208. Colonial Life did, however, invite Ms. Normil to provide additional information that could be considered in its appeal process. *See id.* Colonial Life's records do not indicate that Ms. Normil provided Colonial Life with any additional information.

According to Ms. Normil, however, Decedent left work early due to an illness on July 13, 2001 and was admitted to the

hospital with a cardiac condition. *See* Affidavit of Plaintiff at ¶¶ 4–5. Decedent was "extremely ill" and unable to work from July 13, 2001 to his death on September 23, 2001. *See id.* at ¶¶ 2, 7. Sometime after July 13, 2001, "the employer attempted contact with [Decedent]" and was informed that Decedent was hospitalized. *See id.* at ¶ 8. In fact, Ms. Normil advised Piccadilly that Decedent was hospitalized, that his return date to work was unknown and that he would return to work upon receiving a doctor's release. *See id.* at ¶¶ 9–10. "An agent of the employer" visited [Decedent] and Decedent told him that he would return to work upon receiving a doctor's release. *See id.* at ¶ 11. Decedent did not "formally quit his employment." *See id.* at ¶ 12. During the period of July 13, 2001 and his death, "an agent of the employer known … as 'Eva' " made two cash payments to [Decedent] in the total amount of $1,300.00. *See id.* This information was not provided, however, to Colonial during the appeal process of Ms. Normil's claim.

On December 27, 2001, Colonial Life received a letter from Lance C. Martin, counsel for Defendant Funeral Financial Systems, Ltd. ("FFS"), advising that Ms. Normil had assigned a portion of benefits payable under the Certificate to FFS, and demanding payment of said amount. *See id.* at C–71. FFS had accepted the assignment on September 25, 2001. *See id.* Additionally, the letter stated that the Decedent "entered the hospital for his final illness on July 14, 2001" and that FFS had been advised by Colonial Life personnel that "there was a valid policy sufficient to cover" the amount of the loan extended to Plaintiff by FFS. *See id.*

By letter dated January 17, 2002, Colonial Life wrote Ms. Normil that it had again reviewed the claim for benefits but found that Decedent's coverage ended ef-

fective July 13, 2001, the date of his voluntary termination of employment. *See id.* at C–72.

Colonial Life received another letter from Mr. Martin, dated February 4, 2002. *See id.* at C–74. That letter stated that "the family has informed us that [Decedent] absolutely did not terminate his employment prior to entering the hospital" and that the policy "did not appear to be a normal group policy." *See id.* Instead, Mr. Martin stated that it appeared "to essentially be an individual policy, which would not be affected by any termination of employment by [Decedent]." *See id.*

By letter dated February 19, 2002, Colonial Life advised Mr. Martin that, although the Plan did not provide any further level of appeal, it had reviewed the matters referenced in his February 4, 2002 letter. *See id.* at C–75. Colonial Life advised Mr. Martin that his assertion that Decedent had not terminated his employment with Piccadilly prior to entering a hospital was rejected because it was "contrary to what the employer has advised us" and that Mr. Martin had "provided … no documentation" indicating that the information received from Piccadilly was incorrect. *See id.* In addition, Colonial Life stated that Decedent's coverage under the Certificate ended when he "voluntarily terminated his employment with Piccadilly Cafeterias on July 13, 2001" and that the coverage provided to Decedent was pursuant to a group policy. *See id.*

Prior to this lawsuit being filed, Ms. Normil's attorney wrote a letter to Colonial Life, dated November 19, 2003, which stated that Decedent left work on July 13, 2001, feeling ill and that he never recovered from this illness. *See id.* at C–81. Moreover, her attorney contended that coverage was in effect continuously from the time of active employment until the time of death on September 23, 2001, since

all premiums were timely paid. *See id.* Piccadilly did not notify Decedent when the coverage ended on his life insurance policy, and he was given no opportunity to convert the policy to an individual life policy. *See id.*

Colonial Life responded to this letter, stating that it previously performed an appeal of Ms. Normil's claim, that no additional appeal was available and that her administrative remedies under the plan were exhausted. *See id.* at C–84.

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477

U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### B. ERISA Claim [1]

#### 1. The Analytical Framework

■ There are three standards of review in ERISA decisions. *See Firestone*

---

1. This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

*Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court applies a *de novo* standard of review in those cases where a plan administrator is not granted any discretion over distribution of benefits in an ERISA plan. *See Yochum v. Barnett Banks, Inc.,* 234 F.3d 541, 544 (11th Cir.2000). Where the plan administrator is granted discretion, the Court must apply the "arbitrary and capricious" standard. *See id.* Finally, if the plan grants the administrator discretion, but the Court finds that the benefit administrator operated under a conflict of interest, the Court will apply a "heightened arbitrary and capricious" standard. *See id.*

■ Regardless of whether the ordinary arbitrary and capricious standard or the "heightened" standard applies, the Court "evaluates the claims administrator's interpretation of the plan to determine whether it is 'wrong.'" *See HCA Health Servs. of Georgia v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001). The decision is "wrong" if the Court, after its initial *de novo* review, ultimately disagrees with the decision. *Id.* at 993 n. 23. If the claim decision was not "wrong," then the Court ends the inquiry and affirms the administrator's decision. *See Williams v. Bell-South Telecomm., Inc.,* 373 F.3d 1132, 1138 (11th Cir.2004).

■ However, if the Court disagrees with the plan administrator's interpretation, it must then turn to the issue of whether the claimant has set forth a reasonable interpretation of the plan. *See Lee v. Blue Cross/Blue Shield,* 10 F.3d 1547, 1550 (11th Cir.1994). Assuming the Court finds that the claimant's interpretation is reasonable, the Court must then consider whether the administrator's wrong decision is nonetheless reasonable. *See HCA,* 240 F.3d at 994. A "wrong but reasonable interpretation is entitled to deference even though the claimant's interpretation is also reasonable." *See id.*

■ The next step of the analysis is to "gauge the self interest of the claims administrator." *Id.* If the Court determines that no conflict of interest exists, the Court reviews the administrator's decision under the arbitrary and capricious standard of review and a wrong but reasonable decision will be upheld. *Id.* If the Court finds that a conflict of interest does exist, the heightened arbitrary and capricious review applies and "the burden shifts to the claim administrator to prove that its interpretation is not tainted by self-interest." *Id.* (citing *Lee,* 10 F.3d at 1550). The claim administrator must show that its "wrong but reasonable interpretation of the plan benefits the class of participants and beneficiaries." *Id.* at 995 (citing *Brown v. Blue Cross and Blue Shield of Ala.,* 898 F.2d 1556, 1568 (11th Cir.1990)). Once that burden is satisfied, the claimant may "show by other measures that the administrator's decision was arbitrary and capricious." *Id.* If "the claims administrator fails to show that its plan interpretation benefits the class of participants and beneficiaries," the administrator's decision will not be entitled to deference. *Id.*

■ The Eleventh Circuit has held that, under the ordinary arbitrary and capricious standard, a court reviewing an ERISA claim decision may "look only to the facts known to the administrator at the time the decision was made." *Lee,* 10 F.3d at 1550 (citing *Jett v. Blue Cross and Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir.1989)). Accordingly, the Court's review on a summary judgment motion is confined to "the administrative record as it existed at the time the administrator denied the claim for benefits." *Richards v.*

*Hartford Life and Acc. Ins. Co.,* 356 F.Supp.2d 1278, 1285 (S.D.Fla.2004).[2]

### 2. The Application of the ERISA Standard of Review

█ In the instant case, neither party challenges Colonial Life's discretion to interpret the terms of the policy and determine Decedent's eligibility for benefits. Indeed, the Certificate expressly provided Colonial Life with discretionary authority to construe the terms of the Certificate and determine eligibility for benefits. *See* Certificate at 1. The Court's review of Colonial Life's decision to deny Ms. Normil's claim is therefore conducted under the "arbitrary and capricious" standard. *See HCA,* 240 F.3d at 992–93. Applying the above step-by-step analysis, the Court first examines whether Colonial Life's decision to deny benefits was "wrong."

To remain eligible for coverage under the group life insurance policy, the Certificate requires that an employee remain in "active employment." *See* Certificate at 5. The Certificate defines "active employment" as "working ... for earnings that are paid regularly" while "performing the material and substantial duties of [the employee's] regular occupation." *See id.*

It is undisputed that Decedent did not remain in "active employment" as defined under the terms of the Certificate. Indeed, Ms. Normil does not claim that Decedent returned to work after July 13, 2001. Furthermore, the administrative record reveals that an executive at Piccadilly provided written documentation to Colonial Life that expressly stated that Decedent's last day of work was July 13,

2001. *See* A.R. at C–51. Moreover, the administrative record also shows that Colonial Life followed up with a telephone call to that same Piccadilly executive, who stated that Decedent "just quit" on July 13, 2001. *See id.* at C–64.

Nonetheless, Ms. Normil argues that Decedent's "employment status" is a disputed factual issue. In support, Ms. Normil points to her affidavit which states that Decedent did not "formally quit his employment." *See* Affidavit of Plaintiff at ¶ 12. However, an ERISA plaintiff's affidavit must be disregarded if it was not available to the administrator prior to the claim decision at issue. *See Richards,* 356 F.Supp.2d at 1288; *see also Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1452 n. 5 (11th Cir.1997) (affirming summary judgment for administrator and upholding district court's decision to disregard evidence from "after the [administrator] denied [the claim for] benefits"). Thus, under the arbitrary and capricious standard of review, the Court cannot consider this affidavit.

In determining whether Colonial Life's decision was wrong, the Court can only look to the administrative record. That record shows that when Colonial Life denied the claim on October 31, 2001, it relied on written documentation, followed up by a telephone call, to a Piccadilly executive. *See* A.R. at C–51, C–64. That evidence demonstrated to Colonial Life that Decedent terminated his employment on July 13, 2001. Certainly, it was not wrong for Colonial Life to rely on information supplied to them by a Piccadilly executive in making a determination as to

**2.** The Court notes that district courts in this Circuit have held that, even under the heightened arbitrary and capricious standard, only evidence before the claim administrator at the time the benefits decision was made may be considered in deciding a motion for summary

judgment. *See, e.g., Parness v. Met. Life Ins. Co.,* 291 F.Supp.2d 1347, 1356 (S.D.Fla. 2003). In any event, Ms. Normil does not argue for the application of this "heightened" standard.

whether Decedent remained in active employment and was therefore eligible for coverage at the time of his death. Nor did Colonial Life end its inquiry there. Indeed, Colonial Life invited Ms. Normil to supply any additional information that she might have concerning the claim. *See* C–208. The administrative record does not contain any indication that Ms. Normil supplied additional information to Colonial Life.[3]

Significantly, Colonial Life reviewed the claim in January of 2002 and determined that Decedent was not eligible for benefits. *See id.* at C–72. Colonial Life conducted another review of the matter after being contacted in February of 2002 by Mr. Martin, counsel for FFS, who claimed that FFS had been advised by Colonial Life that there was a policy to cover the loan FFS had extended to Ms. Normil. In addition, Mr. Martin informed Colonial Life that Decedent had not terminated his employment prior to entering the hospital. In response, Colonial Life informed Mr. Martin that, although the Plan did not provide for any further level of appeal, it would review the matters again. *See id.* at C–75. In doing so, Colonial Life determined that Decedent was not covered under the plan. *See id.* Notably, Colonial Life pointed out to Mr. Martin that FFS had not provided any documentation indicating that the information that Colonial Life received and relied upon from Piccadilly was incorrect. *See id.* Thus, the only information Colonial Life had that contradicted the evidence supplied by Piccadilly was an unsupported assertion by an attorney for a non-party who was seeking payment of an assigned claim of Ms. Normil. Clearly, then, Colonial Life was not wrong to choose to rely on the information provided by Piccadilly in making its determination that Decedent was not covered under the policy. *See Brown*, 898 F.2d at 1572 (a fiduciary is "entitled to choose an apparently more reliable source of information when sources conflict").

Simply put, there is no evidence in the administrative record that raises a genuine issue of material fact as to whether Decedent was covered under the terms of the Certificate. Thus, based on this review of the record, the Court concludes that Colonial Life's decision to deny benefits was not wrong.[4]

 Nonetheless, Ms. Normil puts forth a public policy argument that a ruling in Colonial Life's favor would deny benefits to all employees in a situation where an employee left work sick, without informing his employer of the illness, and then died. However, where the "plan documents unambiguously address the substantive rights of the parties at issue, the plan language controls." *Meadows v. Cagle's, Inc.*, 954 F.2d 686, 691 (11th Cir. 1992). Despite the unfortunate circumstances, the Court is obligated to comply with ERISA's requirement that "plans be administered, and benefits be paid, in accordance with plan documents." *Egelhoff v. Egelhoff*, 532 U.S. 141, 150, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). Moreover, Ms. Normil was given an opportunity to challenge Colonial Life's decision through an appeal process and could have brought any relevant evidence supporting her claim

---

**3.** Nor does Ms. Normil argue that she provided such information to Colonial Life.

**4.** The Eleventh Circuit has held that, after the district court makes a determination that the claim decision was not wrong, the inquiry may end and the administrator's decision may be affirmed. *See Williams*, 373 F.3d at 1138. However, the Court notes that even under the arbitrary and capricious standard of review, Colonial Life had a reasonable basis for believing that Decedent lacked coverage at the time of his death.

to the attention of the decision maker. She failed to do so, and cannot now be heard to complain.

Based on the foregoing, the Court finds that there are no genuine issues of material fact. For that reason, Colonial Life is entitled to judgment as a matter of law.

### III. CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that Defendant Colonial Life's Motion for Summary Judgment [DE 24] is **GRANTED**. The Court will separately enter judgment for Colonial Life.