[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 09, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15450
Non-Argument Calendar

_____

D.C. Docket No. 00-00577-CV-CAM-1

VICKIE C. TURNER,

Plaintiff-Appellant.

versus

DELTA FAMILY-CARE DISABILITY
AND SURVIVORSHIP PLAN,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(April 9, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and SHAPIRO*, District Judge.

_____

        * Hon. Norma L. Shapiro, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

PER CURIAM:

Appellant Turner filed this action in state court to recover long term disability benefits from Appellee, Delta Family-Care Disability and Survivorship Plan (the "Plan"). The Plan, a non-contributory ERISA plan sponsored, funded and administered by Turner's former employer, Delta Air Lines, removed the action to federal court. On cross-motions for summary judgment filed in the District Court, the Plan's motion for summary judgment was granted. Turner timely appealed.

## STATEMENT OF FACTS

The Plan is an ERISA non-contributory employee welfare benefit plan as defined in 29 U.S.C. § 1002 (1). It provides short and long term disability benefits, as well as other benefits, to non-pilot Delta employees. The Administrative Committee of Delta Air Lines, Inc. is the Plan Administrator and the Named Fiduciary (as those terms are defined in ERISA).

Section 4.03 of the Plan sets forth the eligibility criteria for Long Term Disability Benefits and states, in relevant part:

> The Employee shall be eligible for Long Term Disability provided [s]he is disabled at that time as a result of demonstrable injury or disease (including mental or nervous disorders) which will continuously and totally prevent [her] from engaging in any occupation whatsoever for compensation or profit, including part-time work, but not including work performed in connection with a rehabilitation program approved by the Administrative Committee.

2

Section 12.01 of the Plan provides that the Administrative Committee, the Named Fiduciary of the Plan for purposes of operation and administration, has the exclusive power to interpret the Plan:

> The operation and administration of the Plan . . .the exclusive power to interpret it, and the responsibility for carrying out its provisions are vested in the Administrative Committee of at least three members, which Committee shall be the Administrator of the Plan. . . . The Administrative Committee shall establish rules for administration of the Plan and transaction of its business. The Administrative Committee shall be the named fiduciary of the Plan for purposes of operation and administration of the Plan. . . .

The powers and duties of the Administrative Committee are further defined in Section 12.02:

> In addition to powers and duties otherwise stated in this Plan, the Administrative Committee shall have such duties and powers as may be necessary to discharge its responsibilities under the Plan, including, but not limited to, the following:
>
> (a)  To establish and enforce such rules, regulations, and procedures as it shall deem necessary and proper for the efficient operation and administration of the Plan;
>
> (a)  The discretionary authority to interpret the Plan, and decide all questions of eligibility of any Eligible Family Member to participate in the Plan or to receive benefits under it, its interpretation and decisions to be final and conclusive;
>
> (c)  To determine the amount, manner, and time of payment of benefits which shall be payable to any Employee or Dependent, in accordance with the provisions of the Plan, and to determine the

3

person or persons to whom such benefits shall be paid;

\* \* \*

    (g)    To decide all questions concerning the Plan;

\* \* \*

    (i)    To delegate all its power and duties as set
Forth in Section 11.04.

**The Administrative Committee shall have the broadest discretionary authority permitted under law in the exercise of all of its functions including, but not limited to, deciding questions of eligibility, interpretation, and the right to benefits hereunder but shall act in an impartial and non-discriminatory manner with respect thereto.** (emphasis added.)

According to Section 12.03, the Administrative Committee's decisions "as to interpretation and application of the Plan shall be final."

While working as a flight attendant in August, 1996, Turner was injured and filed a claim for short term disability benefits, as well as a claim for workers' compensation. Short term disability benefits were payable as long as plaintiff could not return to her previous employment. Ms. Turner received short term disability benefits under the Plan from August 14, 1996 until February 11, 1997. Ms. Turner received workers' compensation benefits at the same time.

On February 8, 1997, Ms. Turner filed an application for long term disability benefits. Long term disability benefits were payable under the Plan so long as Ms.

Turner was unable to engage in any occupation for compensation or profit, including part-time work. Ms. Turner's application for long term disability benefits was approved on April 3, 1997, effective February 12, 1997. Ms. Turner continued to receive long term disability benefits for two years (28 months) until June 7, 1999, when her benefits were stopped. The total period Ms. Turner received short and long term disability benefits was 34 months.

Turner appealed the termination of her long term disability benefits in June, 1999. Delta sent a clerical job description to one of Turner's treating physicians who responded that she could do clerical work with certain restrictions: changing positions as needed; no repetitive lifting, twisting or bending; and lifting limited to 10 pounds. This evaluation followed the doctor's earlier and subsequent recommendation of an intradiscal procedure to allow Turner to return to employment.

Turner's administrative appeal was denied as of June 7, 1999, "Based on the convincing opinions of her own physician, Dr. Chambers, and of the IME physician, Dr. Dopson, that you were able to perform some type of work as of your denial date and the lack of evidence to the contrary, the committee was not persuaded that you were eligible for additional long-term disability benefits."

STANDARD OF REVIEW

A District Court grant of summary judgment is subject to de novo review. The Court of Appeals must determine whether, based on the evidence of record, it agrees with the District Court that the Plan had some reasonable basis for its decision to discontinue claimant's long-term disability benefits so that the Plan's decision was not arbitrary or capricious. Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547, 1554 (11th Cir. 1993); Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1449-1452 (1997).

Ms. Turner contends the Plan's decision is subject to a modified arbitrary or capricious standard of review because Delta is making decisions over funds contributed by Delta and, as Plan funds are disbursed, Delta is obligated to replenish them. Even though the monies are paid from a trust funded by Delta through irrevocable periodic contributions, the Plan has finite resources to pay benefits and decisions on disbursements are made by a committee made up of Delta employees. Delta maintains control over benefits because its employees are on the Administrative Committee making decisions on benefits.

This court decided in Paramore v. Delta Air Lines, 129 F.3d 1446 (11th Cir. 1997), that the arbitrary or capricious standard of review applies to this Plan's decisions because of the broad discretion delegated to the Plan's Administrator in the Plan document. This court has also previously decided, in Buckley v. Metropolitan

6

Life Ins. Co., 115 F.3d 936 (11th Cir. 1997) (per curiam) that the funding structure utilized by this Plan eradicates any alleged conflict of interest so that the arbitrary or capricious standard of review applies.

In the more recent decision of Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1138 (9th Cir. 2001), the members of the Administrative Committee were appointed by the Delta Board of Directors; although the Benefit Fund was organized as a trust, it was funded exclusively by Delta companies based on actuarial data and Delta effectively acted as both administrator and funding source for the Plan. The 9th Circuit Court of Appeals held in Regula, "[u]nder such circumstances, Plan benefits decisions are subject to a less deferential standard of review." But Turner's argument that this less deferential standard should apply here is unavailing because of the decisions of this Court to the contrary.

Turner also argues that the District Court failed to give deference to the opinions of her treating doctors. She again relies on Regula. The 9th Circuit Court of Appeals held not only that Plan benefit decisions are subject to a less deferential standard of review but also that due deference should be given to opinions of the treating physician who has a greater opportunity to know and observe the patient as an individual.

The <u>Regula</u> decision is contrary to the law of this Circuit and cannot govern this appeal. But even if it did, it would not benefit Turner as her treating physician on at least one occasion stated Turner was capable of performing the job description of a clerk, with minor restrictions. The Plan was entitled to rely on that opinion in July, 1999, even if in June, 1999, her doctor had been of the opinion she could not return to her previous occupation of flight attendant. The Plan criterion for long-term disability was inability to work at any occupation.

The Plan was also entitled to rely on the opinion of the independent medical examiner to whom Turner was referred in light of the surveillance report it requested. On January 20, 1999, Turner was observed by investigators for the Plan. Turner was walking in a fluid manner without visible restrictions or medical devices at a bank prior to a doctor's appointment. Turner was then observed walking from the doctor's office with a significant limp and using a cane. Upon arrival at her home, Turner was observed leaning without assistance into the back seat of her car to remove her cane, and entering her residence "without limping as significantly as she did at the medical office, and she did not use her cane."

On February 3, 1999, Turner was again observed by investigators for the Plan. The investigator's report states Turner was observed driving alone to a nearby mall. She was inside the mall for approximately two hours, during which time she was

observed walking, shopping, and descending stairs without the use of a cane. The investigator further observed that "[a]t times, she walked with an emphatic limp, and at other times her stride appeared fluid."

All medical reports and other evidence was considered; all procedures required by the Plan were followed. Whether or not Turner could return to regular duty as a flight attendant, the determination that she was not totally disabled from performing any work in June, 1999, was far from arbitrary and capricious. It is irrelevant that the court or anyone else might reach a different conclusion. Upon consideration of the briefs and record, there was no reversible error. The decision of the District Court is AFFIRMED.