[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 25, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16246
Non-Argument Calendar

_____

D. C. Docket No. 03-00221-CV-DF-5

LINDA SALTER,

Plaintiff-Appellant,

versus

CONTINENTAL CASUALTY COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 25, 2005)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Linda Salter, a registered nurse who was seeking to

recover long term disability benefits under an insurance policy issued by Defendant-appellee Continental Casualty Company ("Continental"), appeals the district court's grant of summary judgment in favor of Continental. Salter argues that summary judgment was improperly granted because she adduced sufficient evidence to raise a genuine issue of fact as to whether she was totally disabled as defined by the insurance policy. We **AFFIRM**.

## I. BACKGROUND

As of 1996, Salter was employed as a nurse at Northside Hospital in Macon, Georgia. During the time of her employment, the hospital was owned by Quorum Health Group, Inc., which offered an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). The benefit plan, which Salter opted to join, included disability insurance in the event a worker became disabled and was unable to perform his or her job function. The disability insurance contained an initial "elimination period," during which no benefits would be paid for 150 days following a worker's disablement. If the worker remained disabled after the expiration of the elimination period, he or she could qualify to receive twenty-four months of benefit payments. To qualify for these payments, the worker had to demonstrate "total disability," which, as defined by the policy, meant that the worker: (1) was

"continuously unable to perform the substantial and material duties of [his or her] own occupation"; (2) was "under the regular care of a licensed physician"; and (3) was "not gainfully employed in any occupation for which [he or she was or became] qualified by education, training, or experience." R2-55 at 3. The policy also provided for additional benefit payments after the expiration of the twenty-four month period. To qualify for these payments, the worker had to satisfy a stricter standard for "total disability," namely that the worker: (1) was "continuously unable to engage in any occupation for which he [or she was or became] qualified by education, training, or experience"; and (2) was "under the care of a regular physician." Id. at 4.

Salter became disabled on 24 September 1996 and was unable to perform her job functions due to back pain and loss of control of her legs. During the 150-day elimination period, Salter underwent surgery to correct certain cervical, thoracic, and lumbar disc protrusions which were causing the pain in her back and legs. Although the neurosurgeon who performed the surgery, Dr. Peter Holliday, indicated in December 1996 that Salter was recovering well from the surgery, he stated that Salter would not be able to return to work until at least June 1997. As a result, after the expiration of the elimination period, Salter began to receive benefit payments on 21 February 1997 because she was able to demonstrate that she was

3

totally disabled as defined by the policy. She continued to receive disability payments based on the post-elimination-period definition of "total disability" until 20 February 1999.

After the expiration of the twenty-four month benefit period provided by the disability policy in February 1999, Continental continued to pay Salter disability benefits. On 29 April 1999, however, Holliday released an Attending Physician Statement ("APS") in which he cleared Salter to perform light duty work. Holliday imposed the specific restrictions that Salter should alternate standing for one hour with sitting for one hour, should not lift more than twenty pounds, should not twist her lower back, and should not work with her arms above her shoulders. Based on Holliday's APS, Continental sent a letter to Salter that indicated she was capable of performing light duty work and, based on vocational assessment reports that had been previously compiled for Salter, suggested three job positions that Salter could fulfil. Moreover, based on the APS and the vocational assessments, Continental indicated that it would discontinue Salter's disability payments on 20 May 1999. Salter appealed to Continental to have her benefits restored, but her appeals were unsuccessful. Accordingly, she filed suit in Georgia state court in June 2003 and alleged that she was wrongfully denied disability benefits. Continental subsequently removed the action to federal court.

4

Following discovery, both Continental and Salter moved for summary judgment, and the district court granted summary judgment in favor of Continental. In making its determination, the district court found that Holliday's APS and the vocational assessments offered by Continental demonstrated that Salter was not "totally disabled" from performing any occupation as required for the receipt of benefits at this stage under the policy. Because Salter presented no evidence to raise a genuine issue of fact as to this conclusion, the district court found that summary judgment was warranted. On appeal, Salter argues that the district court erred because she had presented sufficient evidence to create a question of fact as to her disability. Particularly, she cites Continental's payment of benefits beyond February 1999 and the strict limitations imposed by Holliday in his APS as evidence that she was totally disabled from performing any occupation. In addition, she faults the district court for relying on the vocational assessments because they lacked credibility.

## II. DISCUSSION

We review <u>de novo</u> the district court's grant of summary judgment in a case involving a claim for benefits governed by ERISA. <u>See</u> <u>Williams v. BellSouth Telecomms., Inc.</u>, 373 F.3d 1132, 1138 (11th Cir. 2004). In making this inquiry, "[w]e view all evidence and factual inferences reasonably drawn from the evidence

in the light most favorable to the non-moving party." See Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1277 (11th Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id.

After a careful review of the record and the contentions of the parties, we conclude that the district court properly granted summary judgment. Continental supported its motion for summary judgment with the evidence of Holliday's APS and two vocational assessments which demonstrated that Salter was not totally disabled from engaging in any employment. As a result, the burden shifted to Salter to present evidence which created a question of fact as to her disability. Id.

6

She failed to meet this burden. Despite her argument to the contrary, the fact that Continental paid benefits past the expiration of the initial twenty-four month period did not conclusively establish that she was able to meet the stricter standard of being totally disabled from any occupation. See Turner v. Delta Family-Care Disability & Survivorship Plan, 291 F.3d 1270, 1273-1274 (11th Cir. 2002) (per curiam) (finding summary judgment was properly granted because the plaintiff failed to demonstrate that she was totally disabled even though she had been receiving disability payments for two years prior to the determination that she was no longer totally disabled). In addition, the restrictions imposed on Salter by her treating physician in his APS did not create a fact question as to whether she was totally disabled. See id. (finding a worker was not totally disabled where the treating physician restricted a worker to lifting no more than ten pounds and advised against any repetitive lifting, twisting, or bending). In fact, although it imposed some restrictions on the work she could perform, Holliday's APS cleared Salter to perform light duty and therefore established that she was capable of working. Finally, we reject Salter's argument that she raised a genuine issue of fact by questioning the district court's reliance on certain vocational assessments prepared by Continental. In its motion, Continental cited the APS prepared by Holliday as evidence that she was not incapable of performing any occupation

7

because of her disability. To create a genuine issue of fact on this point, Salter had to adduce evidence which demonstrated she was totally disabled. See Shaw v. Conn. Gen. Life Ins., 353 F.3d 1276, 1286-87 (11th Cir. 2003) (reversing grant of summary judgment because plaintiff offered statements by physicians which directly contradicted the statements of other physicians which concluded the plaintiff was not totally disabled). Because her arguments about the reliability of vocational assessments did not call into question Holliday's conclusion that she was not totally disabled, they are insufficient to warrant a reversal of the district court's grant of summary judgment. In sum, Salter failed to present any evidence which raised a genuine issue of fact as to her total disability, and therefore summary judgment was properly granted in favor of Continental. See Williams, 373 F.3d at 1139 (concluding summary judgment was appropriate where there was no evidence from any physician that plaintiff was completely incapable of working); Turner, 291 F.3d at 1274 (finding summary judgment was properly granted where the plaintiff's own treating physician indicated plaintiff was capable of performing some work, albeit with certain restrictions).

### III. CONCLUSION

In this appeal, Salter maintained that the district court erred by granting summary judgment in favor of Continental based on the APS of Salter's treating

physician and certain vocational assessments which indicated that Salter was not totally disabled. As we have explained, Salter failed to present any evidence which created a genuine issue of fact as to whether she was totally disabled as defined by Continental's disability insurance policy. Accordingly, she could not establish as a matter of law that she was entitled to long term disability benefits under the policy, and therefore the district court's grant of summary judgment is **AFFIRMED**.