Barbara BLANKENSHIP, Plaintiff,

v.

**SMITHKLINE BEECHAM CORPORATION,**
Defendant.

**No. 02–80884–CIV.**

United States District Court,
S.D. Florida.

Sept. 6, 2005.

Paul Martin Sullivan, Jr., West Palm Beach, FL, for Plaintiff.

Kelly Ann Luther, Clarke Silverglate Williams Montgomery, Miami, FL, for Defendant.

## ORDER GRANTING SMITHKLINE'S MOTION FOR SUMMARY JUDGMENT

MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Defendant SmithKline Beecham Corporation's ("SmithKline") Motion for Summary Judgment and Supporting Memorandum of Law [DE # 92], filed July 29, 2005. SmithKline had first moved for summary judgment in this matter on May 28, 2003 [DE # 26]. The Court denied that motion for summary judgment, but remanded the case to give SmithKline's administrator an opportunity to conduct a "reasonably relevant inquiry." The Court closed the case on August 18, 2004, but re-opened it on June 22, 2005. Having conducted a further inquiry of the Plaintiff Barbara Blankenship's present medical condition, SmithKline now moves again for summary judgment. The Court has reviewed the record, the submissions of counsel, the relevant statutory and case law, and is otherwise fully advised in the premises. For the following reasons, the Court finds that SmithKline is now entitled to summary judgment in its favor.

## I. Facts

This suit involves a claim for long-term disability benefits under the SmithKline Beecham Health & Welfare Benefit Plan for U.S. Employees ("Plan"). The claim is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1132(a) and (g). The Plan is an employee benefit plan as defined in 29 U.S.C. 1002(1) established and maintained pursuant to ERISA. Exh. B to Defendant's First Motion for Summary Judgment [DE # 26], ERISA Information section, page 1 ("ERISA Information"). Pursuant to the express terms of the Plan, Hartford served as the Plan's claims administrator at the time the initial determination was made in this case. Exh. B to Defendant's First Motion for Summary Judgment, LTD section, page 5 ("LTD Plan"). SmithKline reserved the "absolute right to interpret the provisions" of the Plan. ERISA Information, page 3. In July 1999, SmithKline transferred the administration of its long-term disability plan from Hartford to Provident Life, operated by UnumProvident ("UNUM"). Defendant's Second Motion for Summary Judgment [DE # 92], at 2.

The Plan used a two tiered system in determining "total disability." "Total disability" was defined as:

> During the first two years of LTD benefits—you are unable to perform all the duties of *your job.*

> After the first two years of LTD benefits—you are unable to perform *any job* for which you are reasonably qualified or may become qualified because of your education, training, or experience.

LTD Plan, page 3 (emphasis added). SmithKline paid benefits under its Long–Term Disability Plan from SmithKline's general assets. ERISA Information, page 8.

Blankenship worked for SmithKline as a pharmaceutical sales representative from 1984 to 1998. Blankenship Aff. ¶ 2 attached as Exh. A, tab 46 to Defendant's First Motion for Summary Judgment ("Blankenship affidavit"). Blankenship has been under the case of Dr. Chauncey Crandall IV, MD ("Dr.Crandall") since 1995 when she suffered from congestive

heart failure. Exh. A, tab 16, History and Physical dated November 1995 by Dr. Chauncey Crandall IV, MD ("Patient History 1995"). Subsequently, she underwent coronary bypass surgery and the implantation of a pacemaker, upon which she is now dependent. Exh. A to Defendant's First Motion for Summary Judgment, tab 46, July 2001 letter from Dr. Crandall. After said surgery, Blankenship went back to work for SmithKline full time. Exh. D to Defendant's First Motion for Summary Judgment. In June 1998, Dr. Crandall suggested that Blankenship apply for long-term disability stating that "[h]er rheumatic heart disease is progressive in nature and she should get on disability." Exh. D to Defendant's First Motion for Summary Judgment, page 5. In July 1998, Blankenship was approved for long term disability benefits. Exh. E to Defendant's First Motion for Summary Judgment. The letter notifying Blankenship of her approval explained that in 24 months pursuant to the Plan, the standard of "total disability" would change. *Id.* at page 14.

In January 2000, UNUM began to conduct a review of Blankenship's claim to determine if she qualified for benefits under the second standard, to be applicable on July 14, 2000. Exh. A to Defendant's First Motion for Summary Judgment, tab 2. At this time UNUM requested that "proof of [Blankenship's] disability be brought up to date." *Id.* Dr. Chauncy submitted an attending physician's statement of disability in response to this request, in which he noted that Blankenship's progress was unimproved. Exh. A to Defendant's First Motion for Summary Judgment, tab 5. On September 5, 2000, Christopher Murphy, RN, CRC ("Murphy") completed a review of Blankenship's record in which he did not review any information past 1998. Exh. A to Defendant's First Motion for Summary Judgment, tab 7. Murphy determined that

there was no objective evidence in the record to support Blankenship's restrictions. *Id.* The next step in the review process was a vocational report completed in September 2000. Exh. A to Defendant's First Motion for Summary Judgment, tab 8. The vocational report found that Blankenship's job as a Pharmaceutical Sales Representative received a light working classification and that she could perform the essential duties of her job.[2] *Id.* Murphy reviewed updated information at least twice. Exh. A to Defendant's First Motion for Summary Judgment, tab 10 and tab 13. The only evidence referred to in these two reviews are that Blankenship did not have "congestive heart failure" and test results taken in August of 2000 were "essentially unremarkable." *Id.* After these two remarks, Blankenship's benefits were denied in November 2000. Exh. A to Defendant's First Motion for Summary Judgment, tab 15.

In February 2001, Blankenship filed an appeal. Exh. A to Defendant's First Motion for Summary Judgment, tab 16. The first reviewing physician, Dr. Jeffrey Johnson, M.D., did a paper review of Blankenship's file and concluded that she could do light level work despite her ongoing valvular heart disease, noting that she has "no myocardial ischemia and has good exercise tolerance." Exh. A to Defendant's First Motion for Summary Judgment, tab 19. Dr. George J. DiDonna, MD, completed a second paper review in the appeals process. Dr. DiDonna, relied on the same information that was previously evaluated by Murphy and Dr. Johnson, as well as additional information provided by Dr. Crandall. Exh. A to Defendant's First Motion for Summary Judgment, tab 50. The appeal review was complete and the decision was upheld to deny Blankenship benefits. Exh. A to Defendant's First Motion for Summary Judgment, tab 51.

Blankenship filed suit in this Court for reinstatement of her long-term disability benefits. The Court denied SmithKline's first motion for summary judgment, finding that its decision to discontinue Blankenship's benefits was both "wrong" and "arbitrary and capricious." Order on SmithKline's Motion for Summary Judgment [DE # 55]. The Court found that, while SmithKline was ostensibly reviewing Blankenship's condition under the broader "any job" standard, it had in effect simply revisited its original decision under the "your job" standard by merely conducting a paper review of the existing record. *Id.* Furthermore, in concluding that Blankenship was no longer totally disabled, SmithKline had relied only on the opinions of its own medical reviewers, none of whom had actually examined Blankenship.

Upon remand, SmithKline's administrator arranged to have cardiologist Dr. Robert Chait, M.D., conduct a medical examination of Blankenship and review her medical records. Defendant's Second Motion for Summary Judgment, at 6. Dr. Chait had previously treated Ms. Blankenship. Ex. B to Defendant's Second Motion for Summary Judgment. After conducting his examination and review, Dr. Chait concluded that progression of Ms. Blankenship's rheumatic heart disease is "extremely remote." Ex. C to Defendant's Second Motion for Summary Judgment, at 4. Indeed, he doubted whether her condition was actually caused by rheumatic heart disease. *Id.* In his report Dr. Chait stated that there is "no doubt in my mind that Ms. Blankenship can work in almost any capacity from a purely cardiac standpoint." *Id.* at 5. He concluded that she could "lift, stand, sit, reach, push, or pull," and he could find "no objective evidence or any cardiovascular reason why [Blankenship] could not return to full time employment even in her former position." *Id.* After reviewing Dr. Chait's report,

SmithKline again determined that Ms. Blankenship is not totally disabled according to the terms of the LTD Plan. Ex. A, Defendant's Second Motion for Summary Judgment. SmithKline's latest determination appears to rely solely on Dr. Chait's report, in addition to the previous evaluations in the administrative record.

## II. Law

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this standard. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In assessing a summary judgment motion, the evidence and all reasonable factual inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County,* 139 F.3d 865, 871 (11th Cir.1998); *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The non-moving party does bear the burden of coming forward with evidence of each essential element of their claim(s), such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990).

To determine the applicable standard of review in an ERISA case, the Court must begin with an analysis of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The first prong of the analysis is whether or not the plan gives the administrator discretion to determine the eligibility for benefits. *Id.* at 111, 109 S.Ct. 948. If the plan does not give the administrator discretionary authority to

construe the terms of the plan or determine eligibility for benefits, the Court is to review the denial of benefits under a de novo standard. *Id.* at 115, 109 S.Ct. 948. However, if the plan at issue grants the administrator such discretion, the administrator's decision is subject to an arbitrary and capricious standard of review. *Id.; Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1138–9 (11th Cir.1989). The same standard of review applies to the administrator's "fact-based determinations" as well. *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1451 (11th Cir. 1997).

■ While recognizing the appropriateness of giving deference to an administrator's decision, courts have held that where there is a conflict of interest the deference should not be as great. *See Levinson v. Reliance Standard Life Ins. Co.,* 245 F.3d 1321, 1326 (referring to a "heightened arbitrary and capricious standard.");*Brown v. Blue Cross & Blue Shield of Ala., Inc.,* 898 F.2d 1556, 1566 (11th Cir.1990)(holding that where there is a substantial conflict of interest the burden shifts to the fiduciary to prove its interpretation was not tainted by self interest). However, courts will not delve into the self interest analysis unless the court first determines the fiduciary's interpretation of the plan is wrong upon a de novo review. *Levinson,* 245 F.3d at 1326; *Denton v. First Nat'l Bank of Waco, Tex.,* 765 F.2d 1295, 1304 (5th Cir.).

## III. Discussion

The parties agree that there are no material facts to be litigated. *See* Joint Pre–Trial Stipulation, at 6–7. Rather, their remaining dispute is over the conclusions to be drawn from the facts. SmithKline argues that it has cured any deficiencies in its original decision to terminate Blankenship's benefits by seeking out and relying upon Dr. Chait's independent medical opinion. Blankenship contends that Dr. Chait's opinion is flawed and emphasizes that SmithKline has not produced evidence that her condition has improved.

■ The Court must first decide whether SmithKline's interpretation of the plan is "wrong" under *de novo* review. *See Levinson,* 245 F.3d 1321, 1326. The definition of "totally disabled" under the plan clearly changed after two years from the "your job" standard to the broader "any job" standard. The second standard allows the administrator to evaluate the applicant in comparison to more jobs. However, the Court found that SmithKline's initial decision to terminate Blankenship's benefits was "wrong" because SmithKline had apparently taken the opportunity to merely revisit Hartford's previous decision and come out with an opposite result upon a paper review which provided little evidence of significant change in Blankenship's condition.

SmithKline has apparently cured this deficiency by obtaining a more reliable, and more current, evaluation of Blankenship's condition. By having Dr. Chait evaluate Ms. Blankenship, SmithKline received new information from an Independent Medical Examiner, who evaluated her ability to perform a range of jobs, not just the her original sales representative position. Dr. Chait's report was consistent with the opinions of cardiologists who had reviewed Blankenship's file during the appeal of SmithKline's first decision to terminate her benefits. Although the Court would be more satisfied had SmithKline conducted a broader inquiry on remand, because the Defendant has apparently conducted its second inquiry under the correct standard and with new, independent information, the Court cannot say that SmithKline's new decision was "wrong."

■ Even if SmithKline's new decision was "wrong," it is not "arbitrary and capricious," even under the heightened standard. As the Court previously held, because SmithKline paid benefits under the Plan to its beneficiaries out of its general assets, the heightened arbitrary and capricious standard of review is appropriate. *See Levinson*, 245 F.3d at 1326. A decision is not to be overturned merely because the Court disagrees with the decision. *See Turner v. Delta Family–Care Disability & Surv. Plan*, 291 F.3d 1270 (11th Cir.2002)("It is irrelevant that the court or anyone else might reach a different conclusion."). Under an arbitrary and capricious standard of review, the question presented before this Court is whether the decision to terminate Blankenship's benefits "was unreasonable or inconsistent with the data with which [the administrator] had been provided." *Paramore*, 129 F.3d at 1452. A heightened arbitrary and capricious standard of review requires that the standard "must be contextually tailored" to the facts at issue. *See Levinson*, 245 F.3d at 1326 (quoting *Brown*, 898 F.2d 1556, 1563–64).

■ SmithKline's new decision to terminate Blankenship's benefits is not unreasonable given the information in the administrative record. Although Dr. Chait's evaluation conflicts with Dr. Crandall's diagnosis and recommendation, SmithKline is entitled to rely on Dr. Chait's independent judgment. Unlike the conclusions of SmithKline's reviewing cardiologists, which the Court faulted in denying SmithKline's first motion for summary judgment, Dr. Chait has actually examined Blankenship. Dr. Chait examined her within the last year, and Dr. Chait does not have any apparent connection with SmithKline. In fact, he formerly treated Ms. Blankenship. SmithKline need not give special deference to Dr. Crandall as Ms. Blankenship's current treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1287 (11th Cir.2003). Therefore, although there is a conflict between Dr. Chait's opinion and Dr. Crandall's opinion, it was not unreasonable or arbitrary for SmithKline to credit Dr. Chait's conclusion.

■ The heightened arbitrary and capricious standard does require the Court to take account of the Defendant's potential conflict of interest. Indeed, the Defendant has the burden to prove that its interpretation of the plan is not tainted by self-interest. *HCA Health Services v. Employers Health Ins. Co.*, 240 F.3d 982, 994 (11th Cir.2001). Although terminating Blankenship's benefits is in SmithKline's financial self-interest, the decision to terminate does not appear to be based merely on self-interest. SmithKline is relying on the opinion of an Independent Medical Examiner which confirms its own reviewers' previous opinions. Blankenship presents no reason to suspect that Dr. Chait is biased or has some connection with SmithKline that would taint his opinion. SmithKline apparently chose him to evaluate Ms. Blankenship because he had treated her previously. While relying solely on in-house medical reviewers would make SmithKline's decision suspect, Dr. Chait's independent judgment removes the appearance of impropriety.

In her opposition to SmithKline's motion for summary judgment, Blankenship misplaces emphasis on some language from this Court's previous order. She argues that SmithKline cannot prevail because it has produced no evidence that she is "no longer disabled" or that her condition has improved. This argument fails to account for the fact that the plan's definition of "totally disabled" shifted after two years

from "your job" to "any job." This Court's previous order did, indeed, find Smith-Kline's first decision to terminate Blankenship's benefits to be "arbitrary and capricious" because it had not found evidence suggesting that Blankenship's condition had improved. However, that analysis centered around the finding that Smith-Kline had done nothing more than review its original award of benefits under the "your job" standard. The Court found that if SmithKline was actually just revisiting its old decision, then it would be arbitrary and capricious to reverse that decision without new evidence of a changed condition. Following remand, however, SmithKline has properly reviewed Blankenship's condition under the broader, "any job" standard. It is not unreasonable for SmithKline to find Blankenship fit to perform some jobs within this broader range, even if her condition has not improved.

Finally, Ms. Blankenship attacks Dr. Chait's conclusions for its disagreement with Dr. Crandall, characterizing Dr. Chait's analysis "flawed" and "unreliable." Blankenship mainly faults Dr. Chait for not taking into account information that was not available to either him or Smith-Kline, specifically reports from Ms. Blankenship's treatment at Bethesda Naval Hospital over forty years ago. Blankenship's other criticism of Dr. Chait apparently stems simply from his disagreement with Dr. Crandall's diagnosis. This Court's role is not to resolve the conflict between Dr. Chait and Dr. Crandall as a factual matter. Rather, this Court must only decide whether it was arbitrary and capricious for SmithKline to rely on Dr. Chait's conclusion over Dr. Crandall's. Blankenship's criticism of Dr. Chait's report does not cast sufficient doubt on Dr. Chait's medical judgment or skill such that this Court should find that SmithKline was unreasonable in relying on him.

## IV. Conclusion

Based on the above analysis, it is hereby

**ORDERED AND ADJUDGED** that the Defendant's motion for summary judgment [DE # 92] is **GRANTED.** This case is hereby **DISMISSED,** and any remaining outstanding motions are hereby **DENIED AS MOOT.**