[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15057
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cv-00660-RBD-TEM


TAZENNA KENNEDY,

Plaintiff-Appellant,

versus

UNITED OF OMAHA LIFE INSURANCE COMPANY,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 28, 2014)


Before TJOFLAT, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Tazenna Kennedy, proceeding *pro se*, appeals the district court's award of summary judgment to United of Omaha Life Insurance Company (United) in her action for wrongful denial of long-term disability benefits, brought under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).  The district court granted United's motion for summary judgment because it found United's decision to deny benefits correct and further found that, in any case, the decision was reasonably supported and not arbitrary and capricious.  On appeal, Kennedy contends the district court erred in numerous respects.[1]  After careful review, we reject Kennedy's contentions and affirm.

ERISA itself does not provide a standard for courts to review the benefits determinations of plan administrators or fiduciaries.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989).  With *Firestone* and *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), as guides, however, this Circuit has formulated a multi-step framework for courts reviewing an ERISA plan administrator's benefits decisions:

---

[1] Specifically, Kennedy argues the district court erred because (i) it did not give controlling weight to her primary treating physician's opinion regarding her work-related capabilities; (ii) it did not consider the "totality" of her medical conditions, including but not limited to her asthma; (iii) it did not adequately consider evidence that her employer deemed her disabled under the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) or that she was also awarded social security disability insurance benefits; (iv) it improperly considered the ameliorative effects of workplace accommodations in making its determination; (v) it relied too heavily on the fact that she did not follow her prescribed treatment regimen after July 2010; and (vi) it did not adequately account for United's conflict of interest.

2

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011), *cert. denied*, 132 S.Ct. 849 (2011).  Under this multi-step framework, the claimant bears the burden of proving that she is disabled and that the administrator's decision was wrong.  *Id.*[2]

---

[2] Kennedy relies heavily upon cases applicable in other contexts, particularly social security disability determinations, to support her appeal, but the rules announced therein are inapposite.  For instance, although courts accord special weight to the opinions of a claimant's treating physician in social security cases, the same rule does not apply to disability determinations under employee benefits plans covered by ERISA. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).  Similarly, while the Supreme Court has explained that a social security disability determination should not take into account the possibility of reasonable

In the instant case, the parties agree United had discretionary authority to construe the terms of the Policy and determine eligibility for benefits. Consequently, the dispositive question is whether the district court erred in finding United's denial reasonably supported and not arbitrary and capricious, having taken into account any conflicts of interest. *See Blankenship*, 644 F.3d at 1355.

We hold that the district court did not so err. In denying Kennedy's request for benefits, United reviewed the conclusions of Dr. Bruce Yergin, Kennedy's pulmonologist. Yergin, following extensive examination and testing, acknowledged Kennedy's symptoms and exertional limitations but nevertheless concluded, in July 2010, that she was capable of working in her regular occupation if not exposed to respiratory irritants. Kennedy has not pointed to any evidence in the administrative record demonstrating that the workplace irritants she encountered at River Point were universal and unavoidable, as opposed to being unique to her specific employer and office space. Accordingly, there was a

---

employer accommodations, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999), no such rule applies to ERISA benefits determinations. Finally, we have previously explained that even the approval of social security disability benefits is not dispositive of whether a claimant satisfied the requirements for disability under an ERISA-covered plan. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999). The same principle should apply to FMLA or ADA proceedings or determinations. *See, e.g.*, *Cleveland*, 526 U.S. at 801-07 (comparing and contrasting the social security disability benefits program and ADA claims); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1295 (11th Cir. 2006) (noting the parallels between the FMLA and ADA but explaining that the statutes ultimately deal with different concepts that "must be analyzed separately").

reasonable basis for United to conclude that Kennedy could work in her regular occupation when, as dictated by the Policy, it set aside peculiarities of Kennedy's work at Riverpoint and instead considered her occupation generally.

United also considered that, despite the allegedly debilitating nature of her health conditions, after July 2010 Kennedy did not again seek medical treatment until December 2010. Contrary to Kennedy's urging, this evidence was probative of the severity of her conditions and further demonstrates that United's denial was not arbitrary or capricious.

As a final example, United considered the opinion of Dr. Vincent Ober, Kennedy's primary care physician, who concluded that, despite certain exertional limitations and the need to avoid exposure to workplace irritants, Kennedy could nevertheless "sit/stand/walk" for at least six hours in an eight-hour day and perform a low-stress job, albeit with regular breaks and absences. Dr. Benjamin Berg, an independent pulmonologist, largely agreed with Dr. Ober's assessment of Kennedy's exertional limitations but ultimately concluded that her medical records did not establish that she would require frequent breaks. The district court evaluated both opinions and, notwithstanding Kennedy's arguments to the contrary, was not required to give Ober's assessment controlling weight over Berg's. *See Black & Decker*, 538 U.S. at 825. The district court's consideration of Ober's and Berg's reports, along with its express acknowledgment that Kennedy

5

suffered from a long history of asthma and related symptoms, refutes her claim that it failed to consider the "totality" of her medical conditions.  Regardless of whether anyone else might have weighted the evidence Kennedy highlights differently, the fact that United based its decision on the evidence in the administrative record precludes a finding that its decision was arbitrary and capricious. *See Turner v. Delta Family-Care Disability & Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002).

Kennedy makes much of the fact that United operated under a conflict of interest, but this was only one factor for the district court to consider in evaluating United's decision.  *See Blankenship*, 644 F.3d at 1355.  The fact that United awarded Kennedy long-term disability benefits pending its investigation, which it did not later seek to recover, is evidence that it rendered an impartial decision despite its conflict.  Moreover, United made its initial decision to deny continuing benefits only after it considered the opinions of Kennedy's treating physicians during the relevant time period and followed up with Yergin on the work-related effects of her conditions.  When Kennedy appealed and submitted additional medical evidence to support her claim, United considered that evidence, and an internal case manager even recommended further review by an independent physician due to the complexity of her diagnoses.  Only after the independent physician reviewed Kennedy's medical records and issued his report did United

uphold its initial denial.  Kennedy cannot point to any aspect of United's decision-making process that was susceptible to being colored by its conflict of interest. Accordingly, the district court did not err in finding United's decision reasonably supported even taking into account its admitted conflict.  *See, e.g.*, *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008).

**AFFIRMED.**