[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15162
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00389-RV-EMT


TIMOTHY P. O'LEARY,

                                             Plaintiff - Appellant,

versus

AETNA LIFE INSURANCE COMPANY,

                                             Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 1, 2018)


Before JORDAN, JILL PRYOR and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Timothy O'Leary filed suit pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the decision of defendant Aetna Life Insurance Company to terminate his long-term disability benefits.  The district court granted summary judgment in favor of Aetna.  O'Leary, proceeding *pro se* on appeal, continues to challenge Aetna's decision terminating his benefits.  In reviewing the decision from Aetna, the ERISA plan administrator, we consider whether the decision was reasonable and entitled to deference.  We conclude that a reasonable basis supported Aetna's decision to terminate O'Leary's benefits and that its decision was not arbitrary and capricious.  We thus affirm the district court.

## I.    FACTUAL BACKGROUND

In 2006, O'Leary was injured in a serious motorcycle accident.  At the time of the accident, O'Leary was employed as the Director of Information Technology for the New England Regional Council of Carpenters.  The New England Regional Council of Carpenters participated in the Association of Community Service Agencies' Group Insurance Trust, which had a long-term disability insurance policy with coverage underwritten by Aetna.

Under the terms of the long-term disability policy, a claimant is entitled to benefits for a period of up to 24 months if he is incapable of performing the material duties of his occupation due to disease or injury.  A claimant is entitled to

2

benefits beyond the initial 24-month period if he is incapable of working "any reasonable occupation" due to disease or injury. Doc. 19-10 at 156.[1] Under the policy, a "reasonable occupation" refers to any "any gainful activity for which [the claimant is]; or may reasonably become; fitted by: education; training; or experience," and for which the claimant earns at least a specified minimum level of income. *Id.* at 171. A disabled claimant generally remains eligible for benefits until Aetna finds that he is no longer disabled. The policy gives Aetna "discretionary authority to determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this Policy." *Id.* at 196.

After the accident, O'Leary filed a claim with Aetna for long-term disability benefits. Aetna approved O'Leary's claim, finding that he was disabled because he was unable to perform the material duties of his occupation due to injury or illness. After O'Leary received 24 months of benefits, Aetna continued to pay him long-term disability benefits, meaning it found that he was incapable of working any reasonable occupation. O'Leary also applied for benefits and received benefits from the Social Security Administration, which found that he was disabled.

In 2015—approximately nine years after the motorcycle accident—Aetna decided to terminate O'Leary's benefits. Aetna informed O'Leary that the

---

[1] Citations to "Doc. #" refer to numbered entries on the district court's docket.

evidence in its file no longer supported a conclusion that he was entitled to benefits under the policy. Aetna explained that it had conducted surveillance on O'Leary, which showed that he was able to drive, tote a garbage can to his garage, and dance at a nightclub. Aetna also indicated that its decision was based on the opinion of an independent physician who had reviewed O'Leary's medical records and spoken with O'Leary's physician. Aetna acknowledged that the Social Security Administration had determined that O'Leary was disabled, but Aetna explained that its decision was based on new information that had been unavailable to the Social Security Administration when it awarded O'Leary benefits. Aetna informed O'Leary that he was entitled to appeal the decision and that he could submit additional medical evidence.

O'Leary appealed the termination of his benefits and submitted additional medical records to Aetna. After receiving the records, Aetna requested independent peer reviews from additional physicians. The physicians who performed these peer reviews opined that O'Leary's medical records showed that he was no longer functionally impaired. After considering this additional evidence, Aetna upheld the decision to terminate benefits. Aetna explained that after performing a "comprehensive review of all records in [O'Leary's] claim file," it found that there was a lack of evidence establishing O'Leary's inability to perform the duties of any reasonable occupation. Doc. 19-5 at 170. Aetna

explained that the evidence it considered included the surveillance of O'Leary as well as peer review reports from the physicians who had reviewed O'Leary's medical records.

O'Leary then filed suit in federal district court challenging Aetna's decision. Aetna and O'Leary filed cross motions for summary judgment. The district court denied O'Leary's motion and granted Aetna's motion, explaining that Aetna's decision to deny benefits was "reasonable and not arbitrary and capricious." Doc. 32 at 12. This is O'Leary's appeal.

## II.    STANDARD OF REVIEW

"We review *de novo* a district court's ruling affirming . . . a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." *Blankenship v. Metro. Life Ins.*, 644 F.3d 1350, 1354 (11th Cir. 2011). Although ERISA itself does not provide a standard for courts reviewing the benefits decisions of plan administrators, we have established the following six-step framework for reviewing a plan administrator's decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

5

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.

### III.   DISCUSSION

We now apply this six-part framework to review Aetna's decision terminating O'Leary's long-term disability benefits.  We affirm because, even assuming that it was *de novo* wrong, Aetna was vested with discretion to review claims and reasonable grounds support its decision.

Regarding the first step, we assume for purposes of this appeal that Aetna's decision to terminate benefits was *de novo* wrong.  Moving to the second step, the parties disagree about whether the policy vested Aetna with discretion to review claims.  The policy in the record states that Aetna has "discretionary authority to determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy."  Doc. 19-10 at 196.  O'Leary argues that the quoted provision comes from a policy that went

6

into effect in 2013 and thus does not address whether the earlier group policy, which governs the claim in this case, gave Aetna discretion to review claims. After O'Leary raised this argument in his summary judgment brief in the district court, Aetna filed an affidavit acknowledging that the provision in the record comes from a 2013 policy but explaining that this language also appeared in the earlier policy that applies to O'Leary. In the district court, O'Leary failed to answer or respond to Aetna's affidavit evidence. Because O'Leary never contested the affidavit, the district court found that he had conceded that the relevant policy gave Aetna discretion in reviewing claims. O'Leary raised no argument before the district court challenging the affidavit as improper—for example, by arguing that it should not be considered because it was not part of the administrative record—so we will consider the contents of the uncontested affidavit. *See Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296 (11th Cir. 2010) (recognizing the "well-established rule against reversing a district court judgment on the basis of issues and theories that were never presented to that court" because "issues not raised in the district court should not be considered on appeal").[2] After considering the affidavit, we conclude that the policy vested Aetna with discretion in reviewing claims.

---

[2] Even if O'Leary had raised a challenge to the affidavit in the district court, he abandoned the issue by failing to raise any argument on appeal that the district court erred in considering the affidavit. *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014). Although O'Leary is proceeding *pro se* on appeal and we construe his brief liberally, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

At the third step, we conclude that reasonable grounds supported Aetna's decision to terminate O'Leary's benefits. We acknowledge that there is some evidence in the administrative record—including O'Leary's self-reported symptoms and opinions from some medical providers—that would support a conclusion that O'Leary remained disabled and entitled to benefits. But other evidence in the administrative record—including the surveillance footage of O'Leary and the opinions of the physicians who reviewed O'Leary's medical records—supports the conclusion that O'Leary's functioning was no longer impaired. Because Aetna was entitled to rely on the surveillance evidence and the assessments of O'Leary's capabilities by independent physicians who reviewed O'Leary's medical files, its decision was not arbitrary and capricious. [3] *See Turner v. Delta-Care Disability & Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002) (concluding that administrator's decision that claimant was no longer eligible for benefits was not arbitrary and capricious when it relied on, among other evidence, surveillance reports); *Blankenship*, 644 F.3d at 1357 (concluding

---

[3] O'Leary argues that Aetna should have given greater weight to the opinion of a consulting psychologist who determined that O'Leary had an impaired memory and would experience "marked difficulty" in returning to his prior employment. Doc. 19-8 at 156. Because O'Leary had received more than 24 months of benefits under the policy, however, he was entitled to benefits only if he was incapable of working "any reasonable occupation." Doc. 19-10 at 156. The consulting psychologist did not address this standard because he considered only whether O'Leary would have difficulty meeting the responsibilities associated with his prior employment. In light of the limited nature of the psychologist's opinion, we conclude that it was reasonable for Aetna not to assign greater weight to this opinion.

that administrator did not act unreasonably in relying on file reviews from independent doctors instead of in-person, physical examinations of the claimant).

O'Leary also argues that Aetna's decision to terminate benefits was unreasonable because it was inconsistent with the determinations of the Social Security Administration and MassHealth (Massachusetts's state Medicaid administrator) that he was disabled and entitled to benefits. We certainly accept that a court "may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits." *Whatley v. CNA Ins.*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999) (internal quotation marks omitted). And this reasoning from *Whatley* further suggests that a court may consider the determination of disability by a state agency, like MassHealth, when reviewing a plan administrator's decision denying benefits. But the decisions of the Social Security Administration and a state Medicaid administrator finding that the claimant was disabled are "not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan." *Id.*

O'Leary nevertheless contends that it was unreasonable for Aetna to terminate his benefits because it failed to consider MassHealth's 2015 determination that he was disabled. We have held that it is unreasonable for a plan administrator to deny benefits when the administrative record did not contain

9

information from the claimant's social security file because a plan administrator is not free, after sending a claimant to the Social Security Administration to seek alternative compensation, "to ignore the evidence generated by the [Social Security] process." *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 675 (11th Cir. 2014). We assume for purposes of this appeal that likewise it would be unreasonable for a plan administrator to deny benefits without considering information from the claimant's file before a state agency that found he was disabled.

But even with this assumption, O'Leary's argument fails because he cannot show that Aetna refused to consider MassHealth's decision or the records that were before MassHealth. It's true that Aetna's decision upholding the denial of benefits did not mention that MassHealth found O'Leary to be disabled in 2015. But Aetna stated that it had considered "every piece of information" in his file, which included Mass Health's disability determination. Doc. 19-5 at 167. And the substance of Aetna's decision confirms that it considered the records that were before MassHealth: Aetna discussed the findings of the psychologist who evaluated O'Leary at MassHealth's request. Given the substance of Aetna's decision on appeal, we reject O'Leary's argument that Aetna failed to consider MassHealth's determination that he was disabled or the records that MassHealth reviewed in making its disability determination.

At the fourth step of our framework, we conclude that Aetna operated under a conflict of interest at the time that it terminated O'Leary's benefits because it both made eligibility decisions and paid awarded benefits out of its own funds. *See Blankenship*, 644 F.3d at 1355. Because there was a conflict of interest, the fifth step of the framework is inapplicable.

Turning to step six, we must take Aetna's conflict of interest into account to determine whether Aetna's decision to terminate benefits was arbitrary and capricious. We have explained that even when a plan administrator has a conflict of interest, "courts still owe deference to the plan administrator's discretionary decision-making as a whole." *Id.* (internal quotation marks omitted). Put differently, a structural conflict of interest is only "a factor" in our review, and our "basic analysis still centers on assessing whether a reasonable basis existed for the administrator's benefits decision." *Id.* (internal quotation marks omitted). Even considering Aetna's conflict as a factor, we cannot say that its decision to deny benefits was unreasonable or arbitrary and capricious given the surveillance video and the physician's assessments contained in the administrative record.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED.**

11